**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

v.

**Louise NISSEN, Respondent.**

**No. 92SC207.**

Supreme Court of Colorado,
En Banc.

April 19, 1993.

Levy & Lambdin, P.C., Marc R. Levy, Karen H. Wheeler, Englewood, for petitioner.

Rotole, Jaunarajs, Blanchard & Lumbye, Jack F. Rotole, Paul F. Lumbye, III, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in this case in order to determine whether the uninsured motorist insurance obtained by the respondent, Louise Nissen, from the petitioner,

State Farm Mutual Automobile Insurance Company (State Farm), provides coverage for injuries she received when she tried to prevent the theft of her car. *State Farm Mut. Auto. Ins. Co. v. Nissen*, 835 P.2d 537 (Colo.App.1992). We find that the insurance policy contains conflicting provisions. When construed in favor of the insured and against the insurer, the policy provides coverage for the respondent's injuries. Therefore, we affirm the judgment of the court of appeals.

## I.

The parties stipulated to the following facts. Louise Nissen was dining with her husband in a restaurant when she noticed someone trying to steal her car and ran outside. While attempting to stop the theft, she was thrown onto the hood of the car. As Nissen clung to the hood, the thief drove the car into traffic and struck a pickup truck in a head-on collision. Nissen was pinned between the two vehicles and suffered serious injuries, with damages exceeding $100,000. The driver and passenger in the pick-up truck, William and Martha Wilson, also were injured.

Nissen filed a claim with her insurance company, State Farm, for compensation under her comprehensive policy, which contained both liability and uninsured motorist coverage in the amount of $100,000 each. State Farm denied coverage under the liability portion of her policy because the thief was a non-permissive driver. State Farm also denied coverage under the uninsured motorist portion of Nissen's policy, however, citing language from the policy which, it asserted, excluded her car from the definition of an uninsured vehicle. The Wilsons, who were also insured by State Farm, were told by State Farm to file a claim under their own uninsured motorist coverage. That claim apparently was paid.

State Farm brought a declaratory judgment proceeding seeking affirmation of its interpretation of the allegedly applicable policy exclusions. Nissen counterclaimed, asserting coverage and citing a conflicting provision contained in the paragraph preceding the exclusions relied upon by State Farm.

Upon cross-motions for summary judgment, the trial court disagreed with State Farm's contention that, because Nissen's car was insured by State Farm and was provided for Nissen's regular use, the car was not an uninsured vehicle for purposes of uninsured motorist coverage. Instead, the trial court found that the car effectively was uninsured when the accident occurred. Therefore the trial court, in a summary judgment ruling, awarded compensation in the amount of the uninsured motorist policy limit to Nissen. The court of appeals agreed with the trial court, finding State Farm's interpretations of the exclusions unenforceable as against public policy and legislative intent. State Farm then brought this appeal before us, and we affirm the ruling of the court of appeals.

In so affirming, we note that the resolution of this case turns on the interpretation of conflicting provisions of the insurance policy. We must first examine whether the provision denying uninsured motorist coverage on cars insured under the same policy can be reconciled with other provisions and with legislative intent. Then we will determine whether the provision denying coverage on cars furnished for one's regular use is consistent with public policy in this particular situation.

## II.

### A.

Before analyzing State Farm's insurance contract, we will summarize briefly the principles which underlie our analysis. Our starting point is the plain language of the contract and the intent of the parties as expressed in that language. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo.1992). Any ambiguities in the contract are construed against State Farm as its drafter. *United States Fidelity and Guar. Co. v. Budget Rent-a-Car Sys., Inc.*, 842 P.2d 208, 211 (Colo.1992). "When provisions of an insurance policy conflict, they are to be construed against the insurer and in favor of coverage to the insured." *Si-*

*mon,* 842 P.2d at 239 (*citing* 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 7401 at 253–54 (1976)). We have declined to give a technical construction to an insurance contract and have stated that the insurance contract's terms are to be construed as they would be understood by a person of ordinary intelligence. *See Simon,* 842 P.2d at 240. This common-sense analysis of an insurance contract is particularly appropriate here because this case involves construction of an automobile insurance policy sold to a consumer who is not expected to be highly sophisticated in the art of reading insurance policies.

With these principles in mind, we will address the parties' contentions.

### B.

▪ State Farm denied liability coverage to Nissen under Section I of the policy because, at the time of the accident, her car was being driven by a thief who did not have Nissen's consent to use the car. Under the policy, the term "Insured" means the person, persons or organizations defined as an insured in the specific coverage sections of the policy. Under the relevant portions of Section I of the policy, an insured is "any other *person* using such a *car* if its use is within the scope of the consent of *you* or *your spouse.*" (Emphasis in original). Nissen does not contest State Farm's denial of liability coverage. She asserts, however, that because State Farm denied liability under Section I of the policy, her car was an uninsured vehicle as defined in Section III of the policy concerning uninsured motorist coverage. Nissen relies on the following policy provision in Section III:

**Uninsured Motor Vehicle**—means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

    .  .  .  .  .

    b. insured or bonded for bodily injury liability at the time of the accident; but:

    .  .  .  .  .

(2) the insuring company denies coverage....

State Farm responds that Nissen's car is excluded from the definition of an uninsured motor vehicle in Section III by an exclusion which appears in a provision following the definition upon which Nissen relies. The exclusion reads as follows:

An **uninsured motor vehicle** does not include a land motor vehicle:

1. insured under the liability coverage of this policy....

Under the facts of this case, the two policy provisions conflict. By denying Nissen's claim for liability coverage, State Farm brought Nissen's car within the definition of an "uninsured motor vehicle." Nissen's car was insured for bodily injury liability at the time of the accident but State Farm later denied coverage. In the words of the policy, Nissen's car was a "motor vehicle" which was "insured ... for bodily injury liability at the time of the accident; but ... the insuring company denies coverage." State Farm is an "insuring company" and nothing within the definition indicates that it does not include the situation where State Farm denies liability coverage as it did to Nissen.

Further, defining Nissen's car as an "uninsured" vehicle for purposes of the State Farm policy is consistent with State Farm's own construction of Nissen's policy with respect to the advice that it gave to the Wilsons, who were the other parties injured in the accident. The Wilsons also were insured by State Farm and were advised by State Farm to pursue their injury claims under their own uninsured motorist coverage. State Farm's instructions to the Wilsons must have been based on its conclusion that, for purposes of Nissen's policy, her vehicle was uninsured at the time of the accident.

The exclusion language upon which State Farm relies conflicts with the definition of an uninsured motor vehicle. Under the *Simon* analysis, the conflicting exclusion must fall. "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though

painstaking study of the policy provisions would have negated those expectations." Robert E. Keeton, *Insurance Law—Basic Text* § 6.3(a) at 351 (1971). *See also* 2 Irvin E. Schermer, *Automobile Liability Insurance* § 25.02[2][a] (1992). *Cf. Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo.1986) (in automobile leasing case, we recognized principle of reasonable expectations as expressed in insurance cases). Nissen had a reasonable expectation based on the coverage language of the insurance contract, despite the conflicting exclusion language, that her injuries due to the negligence of an uninsured person would be covered.

Our construction of the contract is supported by the legislative intent underlying the uninsured motorist statute.[1] We have recognized that the legislative intent behind the statute is to compensate innocent insureds for loss caused by financially irresponsible motorists. *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 61 (Colo.1990) (*citing Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989)). The statute is meant to provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured motorist. *Terranova*, 800 P.2d at 61 (*citing Alliance Mut. Casualty Co. v. Duerson*, 184 Colo. 117, 124, 518 P.2d 1177, 1181 (1974)). Nissen is clearly within the class of persons that the statute intended to protect. She opted to purchase uninsured motorist coverage, and she was injured by an uninsured motorist driving a car which became uninsured at the time of the accident because of State Farm's denial of liability coverage.

Recovery cannot be denied simply because the legislature did not address this particular fact situation. To hold to the contrary and deny uninsured motorist coverage would make Nissen's insurance policy illusory. She would have paid her premiums and received no coverage.

The rule of law that we set forth here is supported by the majority of other jurisdictions confronted with situations like that in the present case—that of the insured being injured by an uninsured stealing the insured's own car. *See, e.g., Comet Casualty Co. v. Jackson*, 125 Ill.App.3d 921, 81 Ill.Dec. 569, 467 N.E.2d 269 (1 Dist.1984) (man struck by own car as he attempted to stop theft allowed to recover uninsured motorist payments); *Guiberson v. Hartford Casualty Ins. Co.*, 217 Mont. 279, 704 P.2d 68 (1985) (plaintiff who was injured when he jumped onto bed of employer's truck to prevent theft allowed to recover damages under uninsured motorist coverage); *Carmichael v. Government Employees Ins. Co.*, 54 A.D.2d 140, 388 N.Y.S.2d 354 (1976) (woman allowed to recover damages under uninsured motorist coverage after injured by own car when unknown person started it rolling).[2]

Contrary to State Farm's assertion, we do not find *Terranova* to be controlling. Although we stated in that case that "the exclusion of a vehicle insured under the liability terms of a policy from uninsured motor vehicle coverage does not violate the legislative purposes and the public policy underlying section 10–4–609...." *Terranova*, 800 P.2d at 62, the present situation is factually distinguishable from *Terrano-*

---

1. The statute reads in part as follows:

   (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of

   uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing. § 10–4–609, 4A C.R.S. (1987 Repl.Vol.).

2. A California appellate court has held that a woman who was beaten and pushed out of her car by a thief could not recover uninsured motorist benefits for her injuries. *Denny v. St. Paul Guardian Ins. Co.*, 196 Cal.App.3d 73, 241 Cal.Rptr. 520 (1987). The court, however, based its reasoning partly on the fact that the exclusion of vehicles insured under the liability portion of the insurance policy was provided for in statute, unlike in Colorado.

*va* and the language is thereby inapplicable.

In *Terranova*, the petitioners received $25,000, the liability coverage limit under the policy, from State Farm. Contending that their economic losses exceeded $100,000, the petitioners sought to recover an additional $75,000—the difference between the uninsured motorist limit of $100,000 and the liability coverage received—under the policy's uninsured motorist coverage. In reality, the petitioners were attempting to extend the liability portion of their coverage beyond the policy limits. This court found under those circumstances that the insured vehicle exclusion was valid, because otherwise "the insured would recover uninsured motorist coverage for a risk that was excluded by the policy, and *which was not paid for by the insured* and not contemplated by Colorado's uninsured motorist legislation." (Emphasis added) (*citing Millers Casualty Ins. Co. v. Briggs*, 100 Wash.2d 1, 665 P.2d 891, 895 (1983)). For the petitioners to have prevailed in *Terranova*, the vehicle in question would have had to have been both "insured" and "uninsured" at the time of the accident.

Unlike the petitioners in *Terranova*, Nissen was denied compensation under the liability portion of her insurance policy. The denial triggered the definition of "uninsured vehicle" as one for which liability coverage has been denied. There was no conflict between policy provisions in *Terranova*. Furthermore, Nissen is not attempting to obtain benefits greater than the policy limits for which she has paid. Because *Terranova* rests on different facts and principles of law, the analysis and interpretation of the exclusion contained therein are not dispositive of the present situation.

Under the principles of contract interpretation discussed above, we find that there was no liability insurance in fact applicable at the time of the accident. Thus the car was not "insured under the liability coverage of this policy" for purposes of determining the uninsured status of the car. To allow the exclusion to prevail over the definition of "uninsured vehicle" relied upon by

Nissen would contravene legislative intent and public policy. This is not the end of our inquiry, however. Before Nissen can be entitled to compensation under the uninsured motorist coverage, we must resolve the second of the exclusions proffered by State Farm.

### C.

State Farm also argues that Nissen was correctly denied coverage under a second exclusion, since the car was available for Nissen's regular use. This exclusion reads as follows:

An **uninsured motor vehicle** does not include a land motor vehicle:

. . . . .

2. furnished for the regular use of **you**
   . . .

We find that State Farm's interpretation of this exclusion is likewise incorrect. In the first instance, we note that the analysis of legislative intent in enacting the uninsured motorist statute is equally applicable to this provision as to the provision discussed above. The legislative directive instructs us to find coverage for the innocent insureds whenever possible.

Turning again to principles of contract interpretation, we find State Farm's position to be untenable. As we stated above, the insurance contract must be interpreted from the perspective of the ordinary reader. In addition, when "construing a policy, words should be given their plain meaning according to common usage ... and strained constructions should be avoided." *Simon*, 842 P.2d at 239 (*citing Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo.1990)). The ordinary reader of the "furnished for the regular use of you" exclusion would not understand it to mean the insured's own car, given the context of the policy as a whole. Under the policy, Nissen's 1982 Chevrolet Camaro was described as "*Your Car,*" (emphasis in original), meaning "the car or the vehicle described on the declarations page." A person does not "furnish" himself or herself with something for his or her own use. Rather, the reasonable meaning of the phrase is that a third party, whether employer, friend or relative, has

provided a car for one's use. The reasonable interpretation of the exclusion thereby does not apply to Nissen.

### D.

In this case, the application of the exclusions as argued by State Farm either conflicts with another provision of the policy or does not apply, and thus the conflict must be resolved in favor of Nissen. At the time of the accident, the car was effectively uninsured, and Nissen is allowed to recover damages under the uninsured motorist coverage of her policy. The judgment of the court of appeals is affirmed.