Carolyn COMPTON, Plaintiff–Appellee,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellant.**

No. 92CA0786.

Colorado Court of Appeals,
Div. I.

Aug. 26, 1993.

Rehearing Denied Sept. 23, 1993.

Certiorari Denied April 4, 1994.

**546**

Thomas D. McFarland, Littleton, for plaintiff-appellee.

Levy & Lambdin, P.C., Marc R. Levy, Stuart D. Morse, Englewood, for defendant-appellant.

Opinion by Judge MARQUEZ.

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals from the summary judgment entered in favor of plaintiff, Carolyn Compton. We affirm.

The parties stipulated to the relevant facts. In May 1989, plaintiff was injured in an automobile accident when, as a pedestrian, she was struck by a vehicle driven by a negligent motorist. The motorist's liability insurance carrier, Guaranty National Insurance Co., paid plaintiff its applicable policy limits of $25,000.

At the time of the accident, plaintiff was insured under three separate policies providing underinsured motorist coverage: a State Farm policy with $100,000 of individual coverage, a Safeco policy with $25,000 of individual coverage, and a Colonial Insurance Co. policy with $25,000 of individual coverage. The parties stipulated that plaintiff's damages resulting from the accident were at least $150,000.

Safeco paid plaintiff the sum of $20,833.33 in exchange for plaintiff's release of her claim for underinsured motorist benefits. State Farm then paid plaintiff $54,166.67 in exchange for a partial release. State Farm's payment was calculated by deducting the Guaranty and Safeco payments from State Farm's $100,000 policy limits. Subsequently,

Colonial Insurance Co. paid plaintiff $20,833.33 in exchange for a release of her underinsured motorist benefits under its policy.

Plaintiff then brought this action against State Farm to recover the difference between her total damage claim of $150,000 and the amounts paid by the various carriers.

Both parties filed motions for summary judgment. The issues for the trial court's determination were the amount State Farm was obligated to pay plaintiff pursuant to the underinsured motorist provisions of its policy and the amount of interest, if any, to which plaintiff was entitled.

Plaintiff argued that she should be permitted to combine or "stack" her underinsured motorist coverages in order to recover her total damages, up to the combined limits of the policies. State Farm argued, however, that it should be entitled to an additional deduction from its $100,000 policy limit for the $20,833.33 paid by Safeco.

Relying on *Thompson v. Shelter Mutual Insurance Co.*, 835 P.2d 518 (Colo.App.1991), *rev'd sub nom. Shelter Mutual Insurance Co. v. Thompson*, 852 P.2d 459 (Colo.1993), the trial court concluded that, after deducting the $25,000 paid by the tortfeasor's liability carrier, plaintiff was entitled to $125,000 in underinsured motorist benefits from the three carriers. It further concluded that, pursuant to the pro rata language in all three policies, Safeco and Colonial were each liable for one-sixth of $125,000 or $20,833.33, and State Farm was liable for four-sixths of $125,000 or $83,333.33. After subtracting from this figure the $54,166.67 State Farm had previously paid, the trial court entered judgment for plaintiff in the amount of $29,166.65 plus costs and interest.

I.

State Farm contends that the judgment must be reversed because the trial court's award violated the clear and unambiguous language of its policy. Specifically, State Farm argues that it was entitled to deduct from its maximum obligation of $100,000 the full $25,000 paid by the tortfeasor's liability carrier *plus* the total amounts paid by Colo-

nial and Safeco ($41,666.66), notwithstanding the fact that plaintiff's stipulated damages were at least $150,000. It argues, therefore, that its maximum potential liability to plaintiff was only $33,333.34 and that, even before this action was filed, it had overpaid plaintiff for her claims. We are not persuaded.

■ Insurance policies are contracts and must be construed to carry out the intent of the parties. Whenever possible, the parties' intent must be ascertained from the policy language alone. In construing a policy, words should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Insurance Co. v. Starke,* 797 P.2d 14 (Colo. 1990).

■ Unless there is an ambiguity in the terms of a policy, a court should avoid strained interpretations and enforce an insurance contract as written. A provision in a policy is ambiguous when it is reasonably susceptible to more than one meaning. *Northern Insurance Co. v. Ekstrom,* 784 P.2d 320 (Colo.1989).

■ When provisions of an insurance policy conflict, they are to be construed against the insurer and in favor of coverage for the insured. *State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165 (Colo.1993). Thus, here, any ambiguities in the contract are to be construed against State Farm. Further, the insurance contract must be interpreted from the perspective of the ordinary reader. *State Farm Mutual Automobile Insurance Co. v. Nissen, supra.* Finally, even unambiguous terms of an insurance policy may be declared void if the interest in enforcing the provision is outweighed by a contrary public policy. *See Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984).

As pertinent here, the State Farm policy provides as follows:

SECTION III—UNINSURED MOTOR VEHICLE—COVERAGE U

. . . .

3. The most we will pay under this coverage will be the lesser of:

a. the difference between the limits of liability of this coverage and the amount paid to the *insured* by or for any *person* or organization who may be held legally liable for the *bodily injury;* or

b. the amount of damages sustained, but not recovered.

. . . .

If There Is Other Coverage

1. If the *insured* sustains *bodily injury* as a pedestrian and other uninsured motor vehicle coverage applies:

a. the total limits of liability under all coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is the per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident. (emphasis in original)

■ Here, while one clause of the State Farm policy provides that, if there is other coverage, the total limits of liability under all coverages cannot exceed that of the coverage with the highest limit of liability, another clause provides that State Farm's share is the percent of the damages that its coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident. We conclude that, as applied to the circumstances before us, these clauses conflict with each other, and that, therefore, the policy is ambiguous.

■ Here, for example, while one clause above would establish that plaintiff could not recover more than $100,000 in total underinsured benefits from all sources, regardless of the extent of her total damages, the other clause would obligate State Farm to pay its share of the damages (up to a maximum of $100,000) that its underinsured vehicle coverage bears to the total available underinsured vehicle coverage.

Based upon our review of the record, we conclude that, in making its determination, the trial court properly construed this provision in favor of coverage, not to exceed State

Farm's maximum liability of $100,000, and determined that State Farm was liable for ⅔ths of $125,000, or $83,333. To hold otherwise would defeat plaintiff's reasonable expectations of obtaining coverage when she paid her premiums. *See State Farm Mutual Automobile Insurance Co. v. Nissen, supra;* see also *Barnett v. American Family Mutual Insurance Co.,* 843 P.2d 1302 (Colo.1993) (insurers may not avoid liability under underinsured motorist coverage by reducing the amount of coverage they contracted to provide by payments received for separate and distinct insurance benefits).

For similar reasons, we reject State Farm's argument that its maximum liability under the policy was $75,000 because of the language in the above-quoted section 3(a) purporting to allow the carrier to deduct any payment by the tortfeasor's liability carrier.

State Farm argues that this language is consistent with § 10–4–609(5), C.R.S. (1987 Repl.Vol. 4A) and should be strictly enforced. However, we conclude that the trial court properly construed this clause together with the above-quoted "other insurance" provision in determining that the offset for the tortfeasor's liability payment was to be proportionately shared by the three carriers of underinsured motorist coverage.

Nor does our supreme court's recent holding in *Shelter Mutual Insurance Co. v. Thompson, supra,* require a contrary result. In that case, Thompson had purchased six automobile insurance policies from Shelter covering six motor vehicles. Subsequently, while driving one of the vehicles, he was injured in an accident with an underinsured motor vehicle. He argued that he should be able to combine or "stack" the underinsured benefits of all six policies.

Our supreme court held, however, that it did not violate public policy for Shelter's insurance policies to contain a provision prohibiting the combining or "stacking" of the underinsured motorist benefits of its own policies. The *Shelter* court noted that, in June 1992, our General Assembly amended § 10–4–609(2), C.R.S. (1993 Cum.Supp.) to clarify its intent that a policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist cover-

age policy *if such provisions are included in multiple policies issued by one insurer to an insured.*

Here, the three policies providing underinsured motorist benefits to plaintiff were issued by three *separate* insurance carriers, State Farm, Safeco, and Colonial. Thus, the present case is both factually and legally distinguishable from the situation in *Shelter.*

We conclude that the trial court's calculations, although made before our supreme court's decision in *Shelter Mutual Insurance Co. v. Thompson, supra,* were correct.

## II.

State Farm also contends that the trial court erred in awarding prejudgment interest. It further argues that the award, including interest, exceeded State Farm's policy limits and was therefore invalid. We perceive no error.

The trial court correctly based its award on § 5–12–102(1), C.R.S. (1992 Repl.Vol. 2) which authorizes prejudgment interest at eight percent per annum when money has been wrongfully withheld.

Further, even if a valid award of prejudgment interest may not exceed the insurer's policy limits, such is not the case here. The record reflects that State Farm admitted in the trial court that its policy limits were $100,000. Further, plaintiff correctly states that the amount of the judgment plus interest, when added to the amount State Farm previously paid plaintiff, totals less than $100,000. Accordingly, State Farm's contention is without merit.

Judgment affirmed.

STERNBERG, C.J., and PIERCE, J., concur.