Logan **KLINE** and Robin Temple, Plaintiffs–Appellees,

v.

**AMERICAN STATES INSURANCE COMPANY, an Indiana corporation, Defendant–Appellant.**

No. 94CA1586.

Colorado Court of Appeals, Div. III.

March 7, 1996.

Rehearing Denied April 25, 1996.

Certiorari Denied Oct. 15, 1996.

Opinion by Judge RULAND.

This is a proceeding to determine the amount of underinsured motorist coverage available under two separate insurance policies. Defendant, American States Insurance Co., appeals from a summary judgment in favor of its policy holders, plaintiffs, Logan Kline and Robin Temple. We affirm.

The relevant facts are not in dispute. Plaintiffs are the divorced parents of a minor child killed when he was struck by an automobile. Prior to his death, plaintiffs shared joint custody of their son, and he spent approximately one-half of his time in each parent's home.

Prior to the fatal accident, each plaintiff had purchased an identical automobile insurance policy from defendant. Each policy provided underinsured motorist coverage of up to $100,000. Plaintiffs' son was insured under each policy as a family member.

The driver of the automobile was insured for $100,000 in liability coverage. Following the accident, the driver's insurance company paid $50,000 to each plaintiff.

Plaintiffs then filed this declaratory judgment action seeking a determination of the coverage available under their policies. On cross-motions for summary judgment, the trial court determined that each plaintiff would be entitled to recover up to $75,000. This amount, when combined with the $100,-000 received from the automobile driver's insurance, equals the maximum recovery of $250,000 permitted for wrongful death by § 13–21–203, C.R.S. (1995 Cum.Supp.). However, the issue of the amount of damages actually sustained by each plaintiff has not yet been determined pursuant to the arbitration proceeding required in the policies.

Purvis, Gray, Schuetze & Gordon, John A. Purvis, Glen F. Gordon, Boulder, for Plaintiffs–Appellees.

Makris and Hunsaker, P.C., William J. Hunsaker, Michael S. Keilly, Wheatridge, for Defendant–Appellant.

I

Defendant contends that the trial court erred for various reasons in determining that there was any coverage available under the underinsured motorist provisions of plaintiffs' policies. We find no merit in any of the allegations of error.

## A

Plaintiffs' policies each provide coverage of up to $100,000 for damages arising from an accident involving an "underinsured" motor vehicle. The parties agree that the somewhat confusing language of the policy was intended to track the applicable provision of § 10–4–609(4), C.R.S. (1994 Repl.Vol. 4A) which provides:

(1) [Uninsured] motorist coverage shall include coverage for ... death which an insured is legally entitled to collect from the ... driver of an underinsured motor vehicle. An underinsured motor vehicle is a ... vehicle, the ownership, maintenance or use of which is insured for ... death at the time of the accident, but the limits of liability for ... death under such insurance ... are:

(a) Less than the limits for [underinsured] motorist coverage under the insured's policy or

(b) Reduced by payments to persons other than an insured [injured] in the accident to less than the limits of the [underinsured] motorist coverage under the insured's policy.

■ Defendant first asserts that because plaintiffs' son was the only "insured" injured in the accident, the automobile driver's $100,000 liability payment must be deemed to equal the underinsured coverage limit of $100,000 in each of plaintiffs' policies. In support of this contention, defendant argues that the claim of each plaintiff is derivative from and based upon the death of their son. However, we agree with the trial court's analysis.

Subject to exceptions not applicable here, in construing a statute, we must apply the plain and ordinary meaning of the words used. *See Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). We conclude that application of this rule of construction requires a determination that coverage exists.

While there was only one insured killed in the accident, each plaintiff purchased a separate policy applicable to the accident, and thus, there are *two* policies of insurance. Pursuant to § 13–21–201(1)(c), C.R.S. (1995 Cum.Supp.), the automobile driver was then obligated to pay $50,000 to each parent. As a result, for purposes of each parent's policy, $50,000 was paid to a person "other than an insured injured in the accident," namely, the other parent. Hence, we conclude that the automobile driver's vehicle was underinsured under the terms of each policy.

Defendant contends that this plain meaning interpretation of the statute reaches an absurd result. It argues that if plaintiffs' son had survived, the $100,000 payment by the automobile driver to or on behalf of the son would be credited to each policy so that the driver was not underinsured under either. Defendant maintains that this same result should occur when a death occurs. We are not persuaded.

Even if we assume that defendant's analysis is correct relative to the application of each policy in the event of injury only, we must apply the statutory provision to the facts before us. Further, we perceive no absurdity in a legislative decision to authorize in effect an award of different amounts depending upon whether an insured is injured or killed in an accident.

## B

■ In the alternative, defendant argues that each of the plaintiffs must be considered to be an insured under the other's policy and that, therefore, the automobile driver's payment satisfies any obligation under either policy. Again, we disagree.

As pertinent here, each policy provides:

B. 'Insured' as used in this part means:

1. You or any 'family member.'

. . . .

3. Any person for damages that person is entitled to recover because of 'bodily injury,' to which this coverage applies, sustained by a person described in 1 ... above.

According to defendant, because plaintiffs' son was an insured under paragraph B.1, his parents become insureds under paragraph B.3. However, even if we assume that this is a correct interpretation of paragraph B of the policy, neither plaintiff was an "insured

injured in the accident" as required by § 10–4–609(4). Hence, we agree with the trial court's ruling. *Cf. Kinsella v. Farmers Insurance Exchange*, 826 P.2d 433 (Colo.App.1992)(After the underinsured policy limits have been paid for the medical expenses incurred by a child, the insurance carrier is not obligated to pay additional expenses claimed by the parent on behalf of the child).

### C

■ Defendant next contends that, pursuant to the analysis of this court in *Leetz v. Amica Mutual Insurance Co.*, 839 P.2d 511 (Colo.App.1992), the automobile driver's liability insurance limit of $100,000 must be deemed to satisfy the $100,000 limit in each of plaintiffs' policies for underinsured coverage because the parents are heirs of their son, the applicable insured. Again, we disagree.

In *Leetz,* the decedent and three other passengers were injured in a collision with the driver of another automobile. The other driver was insured by a liability policy with a $50,000 limit per accident. The policy covering the automobile in which decedent was riding also provided $50,000 in coverage for underinsured vehicles. The decedent's heirs received $16,000 from the $50,000 in proceeds paid by the insurance company for the other driver, and they requested another $34,000 from the company that insured the decedent's vehicle.

A division of this court held that the driver's liability limits were equal to the underinsured limits of the decedent's policy. As a result, the *Leetz* court concluded that the heirs were not entitled to the payment of additional benefits.

We conclude that *Leetz* does not apply under the facts of this case. Defendant's argument again overlooks the fact that here there are two applicable policies—not one. And, unlike in this case, the decedent's heirs in *Leetz* were attempting to expand the underinsured coverage above the per accident policy limits.

We have considered and find no merit in defendant's other contentions relative to the trial court's construction of the underinsured coverage afforded by each policy.

### II

Defendant next contends that if the policies do provide coverage, the maximum amount available to each plaintiff is $50,000 and not the $75,000 decreed by the trial court. We are not persuaded.

■ As noted, under § 13–21–203, C.R.S. (1995 Cum.Supp.), plaintiffs jointly may recover up to $250,000 in damages for the death of their son. And, contrary to defendant's contention, § 10–4–609(5), C.R.S. (1994 Repl.Vol. 4A) does not specify the maximum coverage an insurance company may provide. Instead, the statute merely establishes the minimum required coverage, and thus, it does not preclude an insurer from selling policies that have coverage in excess of the statutory minimums. *See Brown v. American Family Mutual Insurance Co.,* 809 P.2d 1055 (Colo.App.1990). Further, defendant does not rely upon any provisions in its policies which limit payments when defendant has issued both of the policies at issue.

Turning then to the applicable policy provisions, we again agree with the trial court's analysis. One applicable policy provision states:

> If the limit of liability is shown separately for each person and each accident, then the limit of liability shown in the declarations for each person for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages ... for death....

> Any amounts otherwise payable for damages under this coverage will be reduced by all sums paid:

> ... by or on behalf of persons ... who may be legally responsible.

Hence, standing alone, this policy provision purports to limit coverage to $50,000 representing the difference between the policy limit of $100,000 as reduced by the amount paid to each plaintiff by the automobile driver.

However, the above quoted provision is followed in the policy by an "other insurance" clause which provides:

> If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion our limit of liability bears to the total of all applicable limits.

Because both plaintiffs have "similar" insurance policies covering the accident pursuant to which their son is an insured, the "other insurance" provision also applies. After deducting the $100,000 paid by the automobile driver, the potential "loss" under the first sentence of this provision is $150,000. Pursuant to the second sentence, the limit of liability is $100,000 for each policy and the "total of all applicable limits" is $200,000 between the two policies. Thus, the "proportion" due under each policy is one-half of the loss or $75,000.

Hence, the two quoted policy provisions governing the limitations on coverage for the accident are in conflict and thus the policies are ambiguous.

Under these circumstances, we agree with the trial court's conclusion that the analysis in *Compton v. State Farm Mutual Automobile Insurance Co.*, 870 P.2d 545 (Colo.App. 1993) is dispositive of defendant's contention.

In *Compton*, the parties stipulated that the injured plaintiff's damages exceeded $150,000. The carrier for the negligent automobile driver had paid to the plaintiff its liability coverage limit of $25,000.

The plaintiff had underinsured coverage under three policies issued by three different carriers. Two of the policies contained a $25,000 limit and each of these carriers had paid the plaintiff one-sixth of the remaining $125,000 or $20,833.33. The third policy issued by State Farm Mutual Insurance Co. had a $100,000 limit.

The State Farm policy also contained provisions relating to other insurance that were somewhat similar to those quoted from defendant's policy here. The *Compton* court noted the conflict in policy provisions relative to the limitations in coverage under State Farm's policy and therefore concluded that the policy was ambiguous. Because of that

ambiguity, it applied the principle that the policy must be construed against the insurer and in favor of coverage. *See State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165 (Colo.1993). Accordingly, it rejected State Farm's contention that both the negligent motorist's $25,000 payment and the $41,666.66 contributed by the other two carriers should be deducted from State Farm's $100,000 limit.

Instead, the court held that the offset for the negligent driver's payment should be proportionally shared by the three carriers of underinsured motorist coverage. And, the court concluded that State Farm was liable for four-sixths of the remaining $125,000 or $83,333 pursuant to the provisions of the "other insurance" clause.

Based upon the same analysis, we conclude that the trial court correctly determined here that up to $75,000 may be payable under each policy in this case.

Therefore, the judgment is affirmed.

STERNBERG, C.J., and JONES, J., concur.