Marian P. **BENGTSON**, Petitioner–Appellant and Cross–Appellee,

v.

**USAA PROPERTY AND CASUALTY INSURANCE**, Respondent–Appellee and Cross–Appellant.

No. 99CA0163.

Colorado Court of Appeals, Div. V.

May 11, 2000.

**1234** 

Gerald C. Sloat, P.C., Gerald C. Sloat, Boulder, Colorado; Pearson, Milligan & Horowitz, P.C., Jane G. Ebisch, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Walberg & Dagner, P.C., Wendelyn K. Walberg, Englewood, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROTHENBERG.

In this declaratory judgment action, plaintiff, Marian P. Bengtson, appeals the summary judgment entered in favor of the defendant, USAA Property and Casualty Insurance (USAA). We affirm.

## I.

The facts are undisputed. Bengtson's husband was killed in an automobile accident while driving his daughter's car in Weld County. Because the other driver (tortfeasor) was at fault, the tortfeasor's insurer paid Bengtson its $100,000 policy limit.

Bengtson and her husband were residents of Oklahoma at the time of the accident, and were insured under two separate State Farm policies for uninsured/underinsured motorist protection (UM/UIM) with policy limits of $100,000 each. Oklahoma law did not prevent intra-company stacking of the policies and did not allow State Farm to offset the amount paid by the tortfeasor. Accordingly, State Farm paid Bengtson its combined per person limit of $200,000.

The daughter's car was insured under a Colorado policy issued by USAA, with UM/UIM limits of $25,000 per person. Bengtson demanded that USAA pay her its policy limit, and USAA refused. Bengtson then filed this declaratory judgment action seeking a determination of the coverage available under USAA's policy.

The policy defines an underinsured motor vehicle as one whose policy limit for bodily injury liability is less than insurer's limit of liability for UM/UIM coverage. Based on this provision, USAA moved for summary judgment, contending that because the tortfeasor was insured for four times the UM/UIM limit of liability in USAA's policy, he was not an underinsured motorist under the plain language of the policy.

The trial court denied the motion, and ruled that § 10–4–609(2) and (4), C.R.S.1999, permitted Bengtson to stack the limits of her UM/UIM coverage to determine whether the tortfeasor was underinsured. Because Bengtson's total UM/UIM coverage after stacking was $225,000, the trial court concluded the tortfeasor was underinsured and that USAA was potentially liable under its policy. However, the trial court did not treat this denial as a final determination on the merits.

USAA then filed a second motion for summary judgment, contending that its policy required USAA's limit of liability to be offset by the tortfeasor's liability payment, which would reduce USAA's liability to zero. Bengtson filed a cross motion for summary judgment. The trial court granted USAA's motion.

## II.

Bengtson contends the trial court erred in determining that the offset for the tortfeasor's liability payment reduced USAA's liability to zero. We disagree.

Insurance policies are contracts and must be construed to carry out the intent of the parties. Whenever possible, the parties' intent must be ascertained from the policy language alone. In construing a policy, a court should give words their plain meaning according to common usage, and avoid strained constructions. *Compton v. State Farm Mutual Automobile Insurance Co.*, 870 P.2d 545 (Colo.App.1993).

Unless there is an ambiguity in the terms of a policy, a court should avoid strained interpretations and should enforce an insurance contract as written. A provision is ambiguous when it is reasonably susceptible to more than one meaning. *Compton v. State Farm Mutual Automobile Insurance Co., supra.* Any ambiguities are to be construed against the drafter and in favor of the insured. *Farmers Insurance Exchange v. Walther,* 902 P.2d 930 (Colo. App.1995).

■ The interpretation of an insurance contract is a question of law that we review *de novo. Farmers Insurance Exchange v. Walther, supra.*

As pertinent here, the USAA policy provides as follows:

LIMIT OF LIABILITY

. . . .

The limit of liability shall be reduced by all sums paid because of *bodily injury* or *property damage* by or on behalf of persons or organizations who may be legally responsible.

. . . .

OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

(original emphasis).

The trial court held that the language in USAA's "limit of liability" provision was unambiguous and required that USAA's liability be reduced by the $100,000 paid on behalf of the tortfeasor. Bengtson contends this ruling is contrary to the holding in *Compton v. State Farm Mutual Automobile Insurance Co., supra,* and must be reversed. We agree that *Compton* is controlling, but we nevertheless conclude, under the facts of this case, that the trial court reached the correct result. *See Rosa v. Warner Electrical Contracting,* 870 P.2d 1210 (Colo.1994)(appellate court will uphold decision by trial court that has reached correct result, albeit using different reasoning than our own).

In *Compton,* the insured was a pedestrian who was struck by a car. The insured was covered by three UM/UIM policies: a State Farm policy with a $100,000 limit, and two other policies with limits of $25,000 each. After the accident, the tortfeasor's insurer paid its policy limit of $25,000. The insured's own $25,000 policies each paid $20,833.33. State Farm then contended that its limit of liability should be reduced by the amounts the insured had already received.

The State Farm policy contained a "limit of liability" provision which provided in relevant part that:

The most we will pay under this coverage will be ... the difference between the limits of liability of this coverage and the amount paid to the *insured* by or for any *person* or organization who may be held legally liable for the *bodily injury* ....

(original emphasis).

The policy also contained an "other insurance" provision which provided that:

If the *insured* sustains *bodily injury* as a pedestrian and other uninsured motor vehicle coverage applies:

a. the total limits of liability under all coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is the per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.

(original emphasis).

State Farm contended, as USAA does here, that under its policy's "limit of liability" provision, the full amount contributed by the tortfeasor's insurer had to be offset against State Farm's liability. The *Compton* panel disagreed. That panel specifically declared only sections (a) and (b) of the "other insurance" provision to be in conflict, thus making the policy ambiguous. However, the *Compton* panel went on to state that, "[f]or similar reasons," the "limit of liability" provision had to be construed together with the "other insurance" provision. *Compton v. State Farm Mutual Automobile Insurance Co., supra,* 870 P.2d at 548.

The *Compton* panel held that the two provisions, when construed together, required the offset for the tortfeasor's payment to be proportionally shared among the three carriers of UM/UIM coverage. Otherwise, the panel concluded, the offset could be applied to each policy individually, defeating the plaintiff's reasonable expectations of obtaining coverage when she paid her premiums.

*Compton v. State Farm Mutual Automobile Insurance Co., supra.*

In *Kline v. American States Insurance Co.*, 924 P.2d 1150 (Colo.App.1996), another panel of this court faced a similar conflict between a "limit of liability" provision and an "other insurance" provision. Relying on *Compton*, the panel concluded that the policies at issue were ambiguous, and the insurers were obligated to pay their share of the damages.

■ Accordingly, both cases held that when a policy contains both a "limit of liability" provision and an "other insurance" provision similar to those contained in the USAA policy, the provisions are in conflict and make the policy ambiguous. In such a situation, the offset for the tortfeasor's liability payment must be proportionally shared by the separate carriers of underinsured motorist coverage. *See Kline v. American States Insurance Co., supra; Compton v. State Farm Mutual Automobile Insurance Co., supra.*

Applying the holdings of *Compton* and *Kline*, we conclude that the provisions here also are in conflict and make the policy ambiguous. Hence, USAA is contractually entitled only to its share of the offset, but its share is the entire amount because the other policies make no claim to the offset.

In other words, if all of Bengtson's policies allowed for offset reductions, as did the policies at issue in *Compton* and *Kline*, USAA's share of the offset reduction would be one-ninth of $100,000, or $11,111.11, and USAA would then be liable to Bengtson for $13,888.89 (the $25,000 policy limit minus the one-ninth offset reduction of $11,111.11) in UM/UIM benefits. However, the State Farm policies issued to Bengtson in this case do not allow for any reduction by payments made on behalf of legally responsible persons, and the USAA policy specifically does.

■ Therefore, even after applying the principles set forth in *Compton* and *Kline*, USAA is entitled under the provisions of the policies at issue *in this case* to offset the entire payment as its share as if it were Bengtson's sole insurer.

Although we construe an ambiguous policy in favor of coverage, we do so only to protect the reasonable expectations of the insured at the time the insured purchased the policy. *See Public Service Co. v. Wallis and Companies*, 986 P.2d 924 (Colo.1999). Here, the insured under the USAA policy, Bengtson's daughter, could not reasonably have expected USAA's offset to be proportionally reduced by the presence of other policies when the other policies did not allow for offsets. To require coverage under these facts would be to provide Bengtson with a benefit for which the insured neither bargained nor paid premiums.

### III.

■ Even though USAA is entitled to offset the tortfeasor's entire liability payment under these facts, Bengtson contends USAA is still liable to pay its policy limit of $25,000. She reasons that the "other insurance" provision in the USAA policy characterizes its coverage as excess, that the "other insurance" provisions in the two State Farm policies are also excess, and that when there are competing excess policies the insurers are required to pay dollar for dollar on a co-primary basis until the lesser policy is exhausted. *See Allstate Insurance Co. v. Avis Rent-A-Car*, 947 P.2d 341 (Colo.1997). Because the limit of liability under USAA's policy is less than the limits of liability under either of the State Farm policies, Bengtson contends that USAA's policy limit will be exhausted before reaching the benefits of the offset. We disagree.

■ Her argument ignores the plain language of the State Farm "other insurance" provisions. Both provisions specify that their UM/UIM coverage is excess when the insured suffers bodily injury "while occupying a vehicle not owned by *you, your spouse* or any *relative.*" (original emphasis). It is undisputed that Bengtson's husband was occupying a vehicle owned by his daughter. Therefore, we conclude the State Farm policies are not excess.

Nor does this result violate the public policy of Colorado, as Bengtson maintains. *See Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58

(Colo.1990)(legislative intent is satisfied by coverage that compensates a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law). Here, Bengtson has received $300,000, which is $75,000 more than she would have received if the tortfeasor had been totally uninsured.

## IV.

Bengtson also appeals the denial of her motion for summary judgment, and USAA cross-appeals the trial court's denial of its first motion for summary judgment. However, the denial of a motion for summary judgment is not appealable. *See Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996).

## V.

In summary, we conclude that under the terms of its policy, USAA is allowed to offset any liability payments made by or on behalf of persons legally responsible for the injury, subject to competing claims on the offset by other available UM/UIM policies. However, because the other policies available to Bengtson do not allow for any offsets, USAA is contractually entitled to receive the full benefit of the tortfeasor's contribution and its liability is reduced to zero.

Judgment affirmed.

Judge KAPELKE and Judge CASEBOLT, concur.