Britt E. TIDWELL, an incapacitated person, by his conservator Xavier O. Tidwell, Plaintiff–Appellant,

v.

CITY AND COUNTY OF DENVER, a municipal and home rule city of the State of Colorado, Defendant–Appellee.

No. 01CA0617.

Colorado Court of Appeals, Div. II.

June 2, 2002.

Certiorari Granted Jan. 21, 2003.

Wesley W. Hoyt, Englewood, Colorado; David I. Levy, Boulder, Colorado, for Plaintiff–Appellant.

Senter, Goldfarb & Rice, L.L.C., Thomas S. Rice, Nina Hammon Jahn, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

In this tort action arising from an automobile accident, plaintiff, Britt E. Tidwell, a protected person, by his conservator, Xavier O. Tidwell, appeals the trial court's judgment dismissing his complaint against defendant, City and County of Denver, for lack of subject matter jurisdiction based on defendant's assertion of governmental immunity. We affirm.

## I. Facts and Procedural History

Early one morning in May 1996, a Denver police officer, while on duty and driving a marked police car, observed an Oldsmobile traveling eastbound on 23rd Avenue in Denver. The Oldsmobile pulled over near the intersection of Dahlia and 23rd Avenue. The officer pulled up behind the Oldsmobile and when the officer got out of his police car, a passenger exited the Oldsmobile. Ignoring the officer's requests to remain in the car, the passenger began running from the officer. At the same time, the driver of the Oldsmobile sped away from the curb, heading eastbound on 23rd Avenue.

As the officer got back into his car, the Oldsmobile made a left turn off of 23rd Avenue and onto an unknown street. The officer followed the Oldsmobile, without his emergency lights or sirens on. As he came to each street and alley, he slowed his car and looked to the left to determine where the Oldsmobile had turned. At Fairfax Street, about four blocks from where the Oldsmobile had sped away from him, the officer saw taillights to the left. He turned left onto Fairfax and immediately saw the Oldsmobile crash into the side of a limousine at the intersection of 26th Avenue and Fairfax.

The accident killed the driver of the limousine, and Britt E. Tidwell, a passenger in the limousine, was seriously injured. The officer arrested the driver of the Oldsmobile for vehicular homicide.

The conservator filed a complaint seeking damages and alleging that the negligent actions of the officer caused Britt Tidwell's injuries. Specifically, the conservator alleged that the officer was engaged in a high-speed chase without the use of lights, sirens, or other warning devices in violation of the Denver Police Department's pursuit guidelines and procedures. It is undisputed that the officer was speeding as he tried to locate the Oldsmobile and then approached the accident site, although the parties disagree as to his speed.

As relevant here, the City filed a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the basis that it had immunity under the Colorado Governmental Immunity Act (GIA), § 24–10–106(1)(a), C.R.S.2001, because the accident was not caused by the operation of a motor vehicle.

After a three-day evidentiary hearing, as contemplated by *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993), the trial court concluded that if the police officer were in pursuit, the City would be subject to liability under the GIA because such pursuit had occurred without the use of emergency lights or a siren. However, applying the definition of pursuit from the Denver Police Department Operations Manual, Pursuit Guidelines and Procedures, § 204.01(1)(b)(1), the court found that the officer was not in pursuit of the Oldsmobile because he had not given the driver of the Oldsmobile a visual or audible signal directing the driver to stop. Thus, the trial court concluded, because there was no pursuit, Britt Tidwell's injuries did not arise out of the operation of the officer's motor vehicle, the GIA applied, and the City was immune from tort liability. This appeal followed.

## II. Governmental Immunity Act

The conservator argues that the trial court erred in dismissing Britt Tidwell's claim for lack of subject matter jurisdiction when the

evidence showed that the officer was in pursuit and the City had waived its immunity under the GIA on that basis. We affirm the dismissal, but on grounds other than those relied on by the trial court. *See Bengtson v. USAA Prop. & Cas. Ins.*, 3 P.3d 1233, 1236 (Colo.App.2000). Specifically, even though we agree with the conservator that the officer was in pursuit, we conclude that nevertheless the City is entitled to immunity under the emergency vehicle exception to the GIA.

## A. Standard of Review

Whether immunity has been waived under the GIA is an issue of subject matter jurisdiction. The burden of proving jurisdiction is on the plaintiff, and the trial court's findings of fact supporting a determination under the GIA will not be reversed unless clearly erroneous. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra* (the trial court is the fact finder regarding jurisdictional determinations under the GIA, and appellate review is highly deferential); *Quintana v. City of Westminster*, 8 P.3d 527 (Colo.App.2000).

## B. Governmental Immunity Act: Emergency Vehicle Exception

The GIA establishes sovereign immunity for all public entities and public employees over all actions that lie in tort or could lie in tort, except as specifically provided under the GIA. Section 24–10–106, C.R.S.2001.

As relevant here, the GIA waives a public entity's immunity from tort actions "for injuries resulting from: (a) [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." Section 24–10–106(1)(a), C.R.S.2001. For the purposes of our analysis here, we assume without deciding that Britt Tidwell's injuries resulted from the operation of a motor vehicle owned by a public entity.

However, § 24–10–106(1)(a) creates an exception to the immunity waiver for emergency vehicles: if an emergency vehicle is operated pursuant to the circumstances described in § 42–4–108(2) and (3), C.R.S.2001, the

emergency vehicle operator or the governmental entity qualifies for immunity.

However, this immunity is subject to conditions. For example, the emergency vehicle exception provides immunity to public entities and their employees operating emergency vehicles "when in pursuit of an actual or suspected violator of the law." Section 42–4–108(2). Additionally, § 42–4–108(2)(a)(d) specifically grants immunity for certain conduct of the emergency vehicle operator, such as speeding and running stop signs or signals.

Furthermore, § 42–4–108(3) requires that to qualify for immunity under the emergency vehicle exception, emergency vehicle operators must make appropriate use of their audible and visual signals. *See Corsentino v. Cordova*, 4 P.3d 1082 (2000)(analyzing term "emergency" under GIA).

However, § 42–4–108(3) also provides an exception for police vehicles, which, in some circumstances, do not use their warning sirens and lights while in pursuit of suspected violators of Colorado's Uniform Motor Vehicle Law (Title 42):

> [A]n authorized emergency vehicle being operated as a police vehicle while in actual pursuit of a suspected violator of any provision of this title need not display or make use of audible or visual signals so long as such pursuit is being made to obtain verification of or evidence of the guilt of the suspected violator.

We note that no Colorado appellate opinion has interpreted this exception.

In summary, a public entity and its employees are immune from tort liability if the employee is operating a police vehicle while in actual pursuit of a suspected violator of Title 42, even if the employee is not using the vehicle's emergency lights or sirens, if the pursuit is made to obtain verification of or evidence of the guilt of the suspected violator. *See* §§ 24–10–106(1)(a), 42–4–108(2)(3).

## C. Pursuit

In determining that the officer's actions fall within the emergency vehicle exception to the GIA, we first conclude that, under the statute, the officer was in pursuit of the Oldsmobile.

Construction of a statute is a question of law, which we review de novo. *Fogg v. Macaluso,* 892 P.2d 271, 273 (Colo.1995).

Because neither the GIA nor Title 42 defines "pursuit," we must give effect to the General Assembly's intent by looking first at the language of the statute. To effectuate legislative intent, we must give the statutory terminology its commonly accepted meaning. Rather than apply the definition of "pursuit" contained in the Denver Police Department Operations Manual, we look to the dictionary definition of the term to ascertain its plain meaning. *See Fogg v. Macaluso, supra,* 892 P.2d at 274 (endorsing the common usage of the term "emergency" as found in the dictionary). Further, if the meaning of "pursuit" were based on a governmental entity's definition of the term, there could be conflicting definitions of the term throughout the state.

*Webster's Third New International Dictionary* 1848 (1986) defines "pursuit" as: "an act of pursuing (as with malice): following to overtake [usually] with hurtful intentions: a chasing with haste (as to kill or capture)."

Similarly, *Black's Law Dictionary* 1250 (7th ed.1999) defines "pursuit" as "[t]he act of chasing to overtake or apprehend."

Here, the record reflects that the police officer chased the Oldsmobile with haste in order to apprehend the driver. The driver of the Oldsmobile was clearly attempting to flee from the police officer to avoid capture, and the police officer testified that his "ultimate goal" was to apprehend the driver and continue his investigation. Thus, applying the plain meaning of the term, we conclude that the officer was in pursuit and that the trial court erred in reaching a contrary conclusion.

### D. Lights and Siren Conditions

Having concluded that the officer was in pursuit, we must next determine if his actions meet the conditions of the emergency vehicle exception. It is undisputed that the officer did not activate his emergency lights or siren during the pursuit, and the conservator urges that therefore the City is subject to tort liability under § 42–4–108(3). We disagree.

We conclude that the conditions of the exception are met in this case. First, the officer testified that he followed the Oldsmobile because he suspected that the car might be stolen. He also testified that the driver of the Oldsmobile had committed several traffic violations, including careless driving, when he fled from the police officer. Auto theft and careless driving are both violations of Title 42. *See* § 42–4–1402, C.R.S.2001 (careless driving); § 42–5–102, C.R.S.2001 (auto theft). Further, the officer indicated that he followed the driver in order to continue his investigation, obtain an identification of the driver, and obtain evidence about the possible theft of the vehicle.

Thus, the record reflects that the police officer pursued the driver of the Oldsmobile, a suspected violator of the provisions of Title 42, in order to obtain verification of or evidence of the guilt of the driver. Accordingly, the officer's actions fall within the police vehicle exception to the emergency lights or sirens condition. Therefore, he was not required to use his lights and sirens to qualify for immunity under the GIA.

We reject the conservator's contention made at oral argument that the police vehicle exception applies only when an officer is obtaining verification of or evidence of the guilt of a suspected violator while the officer is moving. In other words, the conservator argues that because the police officer would have had to stop the Oldsmobile to obtain any evidence of theft, the exception does not apply in this case. We disagree and find nothing in § 42–4–108(3) that limits the police vehicle exception to verifications while the officer is moving.

Therefore, we conclude that the GIA applies because the officer's actions fall within the emergency vehicle exception to the GIA motor vehicle waiver. The trial court correctly dismissed the complaint for lack of subject matter jurisdiction.

Because of this resolution, we need not address the other issues raised by the conservator: (1) whether the trial court abused its discretion when it excluded the testimony of the conservator's police procedures expert, and (2) whether the trial court erred when it

granted summary judgment in favor of the City on the issue of causation.

The judgment is affirmed.

Judge PLANK concurs.

Judge DAILEY specially concurs.

JUDGE DAILEY specially concurring.

I join in the majority's decision here. I write only to emphasize that the decision should not be read as endorsing the view that plaintiff's injuries "result[ed] from" the operation of a motor vehicle, within the meaning of § 24–10–106(1)(a), C.R.S.2001. Section 24–10–106(1)(a) may very well require more than the mere "but for" causal connection that existed here between the officer's operation of the motor vehicle and plaintiff's injuries. In light of the way in which we resolved the appeal, however, it was not necessary to address that question.