**SHELTER MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Samuel W. BREIT and Mary L. Breit, Defendants–Appellants.**

**No. 94CA0104.**

Colorado Court of Appeals,
Div. V.

March 23, 1995.

Rehearing Denied April 27, 1995.

Certiorari Denied Jan. 8, 1996.

Lapin, Hubbard & Johnson, P.C., Stephen M. Johnson, Denver, for plaintiff-appellee.

Breit, Best, Richman & Bosch, P.C., Bradley A. Levin, Denver, for defendants-appellants.

Opinion by Judge DAVIDSON.

In this automobile accident case, defendants, Mary L. and Samuel W. Breit (Breit), appeal from the summary judgment entered in favor of plaintiff, Shelter Mutual Insurance Company, declaring that Shelter had no obligation under its insurance policies to make any uninsured motorist payments to defendants. We affirm.

Breit was injured in a motor vehicle accident with a third party. The third-party insurance company paid Breit for his injuries up to the policy limits of $100,000. Breit demanded payment of $100,000 from Shelter on the basis of two motor vehicle insurance policies issued by Shelter covering two of his own automobiles, each of which provided, respectively, underinsurance coverage up to $100,000 per person. It is undisputed that Breit's damages exceeded $200,000.

Shelter refused Breit's demand and filed this declaratory judgment action, contending that the anti-stacking provisions in the policy operated to reduce the aggregate uninsured motorist limit to $100,000. The trial court agreed. On appeal, defendants assert that this was error because the anti-stacking provisions of the policy are: (1) ambiguous and (2) contrary to the doctrine of reasonable expectations. We do not agree with either contention.

A.

As pertinent here, the Shelter policy provides as follows:

LIMITS OF LIABILITIES

. . . .

(5) Our maximum liability under the uninsured motorists coverage provided shall be the lesser of:

(a) the difference between the limit of uninsured motorist coverage provided and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) the amount of damages sustained, but not recovered.

OTHER INSURANCE IN THE COMPANY

With respect to any occurrence, accident, death, or loss to which this and any other auto insurance policy issued to you by us also applies, the total limit of our liability under all these policies won't exceed the highest applicable limit of liability of benefit amount under any one policy.

Relying on *Thompson v. Shelter Mutual Insurance Co.,* 835 P.2d 518 (Colo.App.1991), *rev'd on other grounds,* 852 P.2d 459 (Colo. 1993), the trial court found that these provisions unambiguously prohibit stacking of uninsured motorist benefits to an insured who is covered by two or more policies issued by the same company. In the *Thompson* holding, a division of this court, reading "limits of liabilities" and "other insurance in the company" provisions *in pari materia,* concluded that the Shelter policy prohibited the plaintiff from stacking multiple policies issued by Shelter. Those provisions are identical to the policy provisions here.

As did the trial court, we agree with that interpretation and find no ambiguity.

Nonetheless, defendants assert that the *Thompson* ruling is not dispositive because, in its decision, the court did not consider the effect of an additional provision in the Shelter policy, also identical to the one here. That provision, labeled "Other Insurance," provides that:

OTHER INSURANCE

If the insured has other insurance available, the damages shall not exceed the limits of liability of this insurance or of the other insurance, whichever is larger.

We will not be liable for a greater proportion of any loss to which this coverage applies than the limits of liability of this insurance bear to the sum of the limits of liability of this insurance and any other similar insurance available to the insured.

■ Relying on *Compton v. State Farm Mutual Insurance Co.,* 870 P.2d 545 (Colo. App.1993), in which an "Other Insurance" provision was held to be ambiguous, defendants argue that the "Other Insurance" provision here is similarly ambiguous and that it conflicts with the "Other Insurance in the Company" clause. We disagree.

First, *Compton* involved three policies issued by three separate carriers. Thus, the *Compton* court was concerned solely with the "Other Insurance" provision. Clauses relating to any "Other Insurance in the Company" were irrelevant to the issues in *Compton*. On the other hand, *Thompson* involved only multiple policies issued by one insurer to an insured, as does this case.

Secondly, the "Other Insurance" provision in the *Compton* policy is different from the provision in the policy here.

In the *Compton* policy, one clause of the "Other Insurance" provision stated that the total liability under all coverages, regardless of the insured's actual damages, could not exceed the highest limit of any one policy. The subsequent clause, however, stated that the carrier's liability limit was its proportional share of the insured's *damages* which its coverage bore to the total of the insured's underinsured motorist coverage.

On the one hand, the *Compton* policy provided a limitation on the insured's recovery equal to the highest limit of any one available underinsured motorist policy, but then, on the other hand, it indicated that the insurer's limit to the insured was an amount which, depending on the insured's actual damages, could be higher than that limitation. Consequently, as applied to the facts in *Compton,* these two clauses conflicted, and the policy was construed most favorably to the insured.

In contrast, there is no such conflicting language here. Here, the "Other Insurance"

paragraph states that: (1) the total amount recoverable by the insured as damages cannot exceed the highest of any of the applicable coverages; and (2) the insurer's exposure is limited to its *pro rata* share of the amount determined in (1).

Therefore, if there is other insurance, the first clause limits the insured's compensable loss, regardless of actual damages, to the highest amount payable on any one of the policies by which the insured is covered, and the *pro rata* clause then identifies the percentage of that maximum amount of benefits for which the insurer will be responsible.

Unlike the policy in *Compton,* the "Other Insurance" provision here is unambiguous. Neither do the two clauses conflict.

Similarly, and contrary to defendants' contention, we perceive no conflict between the second, or *pro rata,* clause in the "Other Insurance" provision here and the anti-stacking language in the "Other Insurance in the Company" provision.

These provisions plainly address two different concepts. By its terms, the anti-stacking clause prohibits stacking of underinsured motorist benefits of multiple policies issued by one carrier to one insured, whereas the *pro rata* clause in the "Other Insurance" provision provides a formula to be used among different carriers to determine their respective responsibilities. *Compare Thompson v. Shelter Mutual Insurance Co., supra,* with *Compton v. State Farm Mutual Insurance Co., supra.*

### B.

Further, we find the doctrine of reasonable expectations inapplicable to the circumstances here.

The test of the meaning of a word or phrase under the reasonable expectations doctrine is what an ordinary layperson would have understood it to mean. Resort to the doctrine may be appropriate in unique circumstances or circumstances of extreme unconscionability. *See Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986). However, the doctrine supplements, but does not substitute for the ordinary rule that insurance policies are contracts and therefore generally are to be construed according to well-settled principles of contract construction. *Cf. Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748 (Colo.1990).

Here, unlike the policies in Colorado cases in which the doctrine has been applied, the policy language is not conflicting, ambiguous, or contrary to legislative policy. Thus, any expectation that this policy would allow stacking of uninsured motorist benefits to an insured who is covered by other Shelter policies simply would not be reasonable.

### C.

Under the standard set forth in *Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993), this appeal is not frivolous, and we decline plaintiff's request for fees pursuant to C.A.R. 38(d).

The judgment is affirmed.

ROTHENBERG and KAPELKE, JJ., concur.