**E–470 PUBLIC HIGHWAY AUTHORITY,**
**Petitioner–Appellant and Cross–**
**Appellee,**

v.

**Jeanne Y. JAGOW, Trustee,**
**Respondent–Appellee,**

and

**Stephen A. Hellerstein, Trustee; Stephen A. Hellerstein, Successor Trustee to L.A. Hellerstein, Trustee; and Howard L. Farkas, Respondents–Appellees and Cross–Appellants.**

No. 99CA1728.

Colorado Court of Appeals.
Division I.

Feb. 15, 2001.

Certiorari Denied Sept. 10, 2001.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, Lynn B. Obernyer, James Birch, Denver, CO, for Petitioner–Appellant and Cross–Appellee.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Denver, CO, for Respondent–Appellee.

Opperman & Associates, P.C., Marlin D. Opperman, William M. Schell, Douglas S. Widlund, Denver, CO, for Respondents–Appellees and Cross–Appellants.

Opinion by Judge VOGT.

In this partial taking condemnation case tried to a commission, E–470 Public Highway Authority (the Authority) appeals the judgment entered in favor of respondents, Stephen A. Hellerstein, Trustee; Stephen A. Hellerstein, Successor Trustee to L.A. Hellerstein, Trustee; and Howard L. Farkas (collectively, Hellerstein), and Jeanne Y. Jagow, Trustee. Hellerstein cross-appeals from the trial court's order denying its motion for attorney fees. We affirm in part, reverse in part, and remand with directions.

The Authority filed a petition in condemnation to acquire a portion of respondents' land for use in the construction of Highway E–470. Prior to the valuation trial, the trial court ruled that the Authority had not established that respondents were required to dedicate the property for E–470. Accordingly, it ordered the Authority not to present valuation evidence premised on an assumption that such dedication was required.

The trial court also ruled, following an evidentiary hearing, that the highway project did not substantially impair access to the remainder of respondents' property. It therefore ordered that respondents could not present evidence of damages attributable to loss of access, and instructed the commission that any damages arising from loss of access were not compensable.

At the conclusion of the valuation trial, the commission found that the value of the property taken was $1,323,691.15, damages to the residue were $2,888,272.80, and the value of the special benefit to the residue was $297,000. The trial court denied the Authority's motions for post-trial relief, denied Hellerstein's motion for attorney fees,

and entered judgment in accordance with the commission's assessment.

## I.

The Authority contends that the sum awarded for the taking of respondents' property should have reflected the fact that the property owner was required to dedicate property for the E-470 highway, and that the trial court erred in ruling that no such dedication was required. We disagree.

The Fifth Amendment to the U.S. Constitution and Colo. Const. art. II, § 15, prohibit the taking of private property for public use without just compensation.

■ When a portion of a landowner's property is taken for public use, just compensation includes payment for the portion actually taken and compensation for injury to the residue or remainder of the property. As to the latter, the landowner is entitled to recover all damages that are the natural, necessary, and reasonable result of the taking, as measured by the reduction in the market value of the remainder, and is entitled to present any relevant evidence concerning diminution of market value caused by the taking. *La Plata Electric Ass'n v. Cummins*, 728 P.2d 696 (Colo.1986).

When the taking is for the purpose of highway construction, compensation for a partial taking consists of the value of the property taken and any damages to the residue, "reduced by the amount of any special benefits which result from the improvement or project, but not to exceed fifty percent of the total amount of compensation to be paid for the property actually taken." Section 38-1-114(2)(d), C.R.S.2000.

■ Evidence of an encumbrance or reservation that diminishes a property's value is admissible in a condemnation proceeding as relevant to the property's fair market value. *City of Englewood v. Reffel*, 173 Colo. 203, 477 P.2d 361 (1970).

## A.

In support of its argument that the property at issue here was subject to a required dedication for the E-470 highway, the Authority relied on a 1987 annexation agreement between the property owner and the City of Aurora. The trial court concluded that the agreement was unambiguous and that it did not require a dedication for E-470. We review these rulings *de novo, see Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo.1996), applying well-settled principles of contract interpretation.

■ Contracts must be construed to give effect to the intent of the parties. In determining intent, we construe the contract as a whole, giving effect to every provision. *In re Application for Water Rights of Estes Park v. Northern Colorado Water Conservancy District*, 677 P.2d 320 (Colo.1984). A contract is not to be interpreted in a vacuum. Rather, a court must consider the subject matter of the contract, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the parties' purposes and objects. *Total Petroleum, Inc. v. Farrar*, 787 P.2d 164 (Colo. 1990).

■ In appropriate circumstances, the parties' intent may be determined by construing together separate documents that pertain to the same subject matter, even if the documents are not executed by the same parties. This is particularly true of documents executed simultaneously. *Powder Horn Constructors, Inc. v. City of Florence*, 754 P.2d 356 (Colo.1988); *Ainsworth v. Colorado Division of Gaming*, 973 P.2d 727 (Colo.App.1999).

■ Further, it is a basic principle of contract interpretation that a more specific provision controls the effect of general provisions. *Holland v. Board of County Commissioners*, 883 P.2d 500 (Colo.App.1994).

## B.

■ The annexation agreement provision on which the Authority relies states:

> ANNEXOR agrees to dedicate, at the time of each platting, all necessary street rights-of-way for the full width thereof ... for streets lying within the Property. ANNEXOR also agrees to dedicate principal arterials and highways within the Property

to CITY earlier than platting, if such dedications are reasonably required by CITY for commencement of construction of such roadways.

The Authority argues that the term "highways," as used in this provision, unambiguously includes the E–470 highway, and that the trial court erred in considering extraneous evidence to reach a contrary conclusion. In our view, the Authority's interpretation is erroneous because it focuses on the meaning of "highways" in a vacuum, without considering the circumstances existing at the time of the agreement and without considering a simultaneously executed summary of the agreement that sheds light on whether E–470 was included in the "principal arterials and highways within the Property" that the annexor agreed to dedicate to the City of Aurora.

It is undisputed that the general development plan attached to the annexation agreement does not contemplate any multi-lane, limited access highway across the property. Rather, at the time the agreement was drafted, the proposed Highway E–470 was to be constructed 1.5 miles away from the property.

Moreover, along with the agreement itself (dated May 18, 1987), a summary of the agreement was provided to the Aurora City Council at its May 18, 1987, meeting. The summary outlines the ways in which the agreement differs from the City's model annexation agreement. As relevant here, the summary states that, while the model agreement required "E–470 dedication and financing," dedication was "not required" under the annexation agreement at issue here.

The trial court appropriately considered both the circumstances existing when the annexation agreement was entered into and the specific reference to E–470 in the agreement summary in determining whether the E–470 highway was intended by the parties to be encompassed in the phrase "principal arterials and highways within the Property." Contrary to the Authority's argument, the summary was not a "pre-contract" or prior agreement extinguished by the merger clause in the annexation agreement, but was a simultaneously executed document that could properly be considered in determining the parties' intent. *See Ainsworth v. Colorado Division of Gaming, supra.*

In sum, we agree with the trial court that the 1987 annexation agreement unambiguously did not require a dedication for E–470. Thus, the court did not err in precluding the introduction of valuation evidence based on an assumption that such dedication was required.

## II.

The Authority next contends that the commission's award of $2.88 million for damages to the residue of the property was unsupported by the evidence and excessive as a matter of law, and that the trial court therefore erred in denying its post-trial motion to set aside that award. We agree.

Respondents' expert appraisers were prepared to testify at the valuation trial that the value of the residue was significantly diminished by the loss of access to Gun Club Road that would result from the construction of Highway E–470. One of the experts had assigned a pre-taking value of $8,230,000 and a post-taking value of $4,330,000 to the residue, resulting in damages of $3,900,000, with no amount awarded for special benefits. Respondents' second expert assessed total damages to the residue at $4,033,600, which represented the difference between a pre-taking value of $6,913,100 and a post-taking value of $2,948,400. The Authority's expert valued the residue at $2,517,000 before the taking, found that it had not been damaged but had benefitted in the amount of $281,000, and thus valued the residue after the taking at $2,798,000.

At the conclusion of a pretrial hearing on the Authority's motion to exclude evidence of access-related damages, the trial court ruled, in accordance with *State Department of Highways v. Davis,* 626 P.2d 661 (Colo.1981), that respondents had not shown that the highway project would substantially limit access to their property and, therefore, would not be permitted to present evidence of damages attributable to loss of access. It also instructed the commission that any damages arising from loss of access to Gun Club Road

were not compensable. These rulings have not been challenged on appeal.

After the trial court made its access ruling, the Authority asked the court to preclude respondents' experts from testifying because they were admittedly unable to segregate out from their damages figures the amount attributable to non-compensable access-related damages. The trial court ruled that the witnesses would be permitted to testify but that they could not "assign any compensation to ... loss [of] access."

Consistent with the trial court's ruling, respondents' experts did not testify at the valuation trial to any post-taking value of the remainder. Further, when one expert testified that he considered loss of access as an important factor in valuing the remainder, the testimony was stricken.

After the valuation trial, the Authority moved for judgment notwithstanding the verdict, a new trial on damages, or a remittitur, arguing that the $2.88 million award for damages to the remainder was unsupported by the evidence and excessive as a matter of law. The trial court denied the motion, finding, based on its review of the evidence and the available trial transcripts, that there was some evidence to support the commission's award.

## A.

As an initial matter, we do not agree with the Authority that the trial court erred in refusing to preclude respondents' witnesses from testifying when it was established that they could not segregate the portion of their valuation attributable to loss of access.

The Authority relies on a line of cases holding that valuation testimony based wholly or in part on a noncompensable consideration must be stricken in its entirety if the witnesses cannot eliminate the improper factor from their valuation. See State ex rel. Moore v. Bastian, 97 Idaho 444, 546 P.2d 399 (1976); Commonwealth, Department of Highways v. Gardner, 413 S.W.2d 80 (Ky. 1967); State Highway Commission v. Central Paving Co., 240 Or. 71, 399 P.2d 1019 (1965); see also Rose v. State, 19 Cal.2d 713,

123 P.2d 505, 521–522 (1942)("The presence of a single compensable injury ... should not be made the basis for a recovery of the total depreciation in value of a landowner's property where it appears that much of the depreciation is attributable to legally noncompensable factors.").

However, other courts have held that such testimony should not be stricken in its entirety if part of the testimony is proper and admissible. See Arkansas State Highway Commission v. Kennedy, 248 Ark. 301, 451 S.W.2d 745 (1970)(trial court properly refused to strike all the testimony of landowners' expert witness where part of it was proper and admissible); People ex rel. Department of Public Works v. Lipari, 213 Cal.App.2d 485, 28 Cal.Rptr. 808 (1963)(where valuation testimony embraces evidence which is proper as well as that which is not, trial court has discretion to deny motion to strike); Schneider v. State, 51 Wis.2d 458, 187 N.W.2d 172 (1971)(trial court did not abuse discretion in declining to strike all testimony of value witness and, instead, instructing jury not to consider noncompensable factors in determining diminution in value); see also 5 J. Sackman, Nichols on Eminent Domain § 23.07[1] at 23–78 (rev.3d ed. 2000) ("It has been held that, although a court may properly strike from the record testimony of value that is based upon an erroneous theory of value, such a ruling should not be made when only a portion of the testimony is improper. In such a case, a motion should be directed to that portion of the testimony which is objectionable.").

We also note that divisions of this court have taken varying approaches as to the effect of a refusal to exclude valuation testimony that includes improper considerations. Compare Denver Urban Renewal Authority v. Hayutin, 40 Colo.App. 559, 583 P.2d 296 (1978)(reversible error to deny motion to strike appraiser's testimony as to value that was based on sales not personally verified by him), with City of Westminster v. Jefferson Center Associates, 958 P.2d 495 (Colo.App.1997)(distinguishing Hayutin and holding that it was not error to refuse to strike expert testimony as to unverified sales

when such sales were not directly considered by City's expert in making appraisal); *see also Fowler Irrevocable Trust 1992–1 v. City of Boulder,* 992 P.2d 1188 (Colo.App.1999)(valuation testimony based on improper assumptions should not have been admitted in inverse condemnation case; because jurors may have relied on the testimony, retrial was required), *aff'd in part, rev'd in part,* 17 P.3d 797 (Colo.2001).

We are persuaded by the rationale of those cases that have permitted trial courts to decline to strike valuation testimony that is not based entirely on noncompensable considerations. Here, respondents' experts' valuations were not based entirely on the impermissible factor of loss of access, but included factors entirely unrelated to access. Thus, the trial court did not err in permitting the experts to testify but precluding them from giving a post-taking value attributable to loss of access and then instructing the commission that loss of access damages were not compensable.

### B.

We nevertheless conclude that the $2.88 million award for damages to the remainder of the property must be reversed. Even considering the testimony of respondents' witnesses, there is no basis in the record for a damages award in this amount. Accordingly, the trial court should have granted respondents' motion for post-trial relief as to this issue.

■ Where an award of damages is manifestly excessive in light of the evidence presented, even though not a product of bias, prejudice, or passion, a court has the power under C.R.C.P. 59 to grant a new trial or, in the alternative, to deny a new trial on the condition that the plaintiff agree to a remittitur of the amount of damages found to be excessive. *Burns v. McGraw–Hill Broadcasting Co.,* 659 P.2d 1351 (Colo.1983).

■ The compensation due for injury to the remainder is measured by the reduction in the remainder's market value resulting from the taking, offset by the amount of any special benefits. *See La Plata Electric Ass'n v. Cummins, supra.* However, mere diminution in value alone does not amount to grounds for awarding compensation. *City of Northglenn v. Grynberg,* 846 P.2d 175 (Colo. 1993). Rather, there must be competent evidence in the record to show that the taking caused the diminution in value. *See City & County of Denver v. Hinsey,* 177 Colo. 178, 493 P.2d 348 (1972)(reversing damages awarded in condemnation proceedings where, even though jury was properly instructed, there was no admissible evidence supporting the damages award); *City & County of Denver v. Tondall,* 86 Colo. 372, 282 P. 191 (1929)(same).

■ In this case, there was no evidence at trial that $2.88 million in damages was caused to the remainder of respondents' property by the highway construction. The only quantifiable damages to which respondents' witnesses testified was the approximately $100,000 cost of redoing the development plan.

One of respondents' witnesses attributed some damages to loss of visibility. However, there was no dollar figure assigned to that factor, and the witness had not even mentioned loss of visibility when he was asked what factors were important in analyzing the post-taking value of the remainder. Respondents' attempt to bolster their loss of visibility testimony by claiming that the Authority's expert attributed damages of over $9,000 per acre to loss of visibility is untenable. That expert had concluded there was no damage to the remainder as a result of the taking and had valued the property at only $8,800 per acre before the taking. In sum, there is nothing in the record to indicate that a loss of visibility, if it existed, could have caused damages remotely approaching the amount awarded.

A question put by one of the commissioners to respondents' expert suggests that, although the commission had been advised of the trial court's pretrial ruling on the issue, loss of access remained a concern to them. To the extent the commission's damages award was in fact based in part on loss of access, a noncompensable factor, the award cannot be sustained even though the trial court properly instructed the commission and

the Authority did not object to the instruction on this issue. *See City & County of Denver v. Hinsey, supra.*

In closing argument, respondents' counsel invited the commission to consider respondents' appraisers' pre-taking values and the Authority's appraiser's post-taking value in calculating the difference in the market value of the residue before and after the taking. Respondents again argue on appeal that the damages award can be upheld as within the range of valuation testimony presented if the commission compared the respondents' pre-taking value and the Authority's post-taking value and then awarded a sum approximating the difference between those values. We do not agree.

■ In contrast to cases in which the fact finder may believe or disbelieve any portions of the witnesses' testimony, a condemnation award cannot be based simply on the difference between the before-taking value assigned by one side's witness and after-taking value of the other side's witness. *See Genge v. City of Baraboo,* 72 Wis.2d 531, 241 N.W.2d 183 (1976)(rejecting argument that jury in condemnation action could use before-taking value of one witness and after-taking value of another witness and arrive at a verdict in between those values); *see also Times Square Realty, Inc. v. City of Grenada,* 421 So.2d 1053 (Miss.1982)(reversing condemnation award arrived at by averaging two separate and different approaches to value); 5 *Nichols on Eminent Domain, supra,* § 17.1[4] at 17–24 ("Even though within the range of the testimony, if the award represents an averaging of the conflicting appraisals, it is improper.").

In sum, we conclude that the award of compensation for damages to the remainder of respondents' property is not supported by the evidence. Accordingly, the Authority's post-trial motion should have been granted. On remand, the trial court is directed to offer respondents the option of remittitur as set forth in the Authority's motion or, if respondents do not agree to a remittitur, to order a new trial on the amount of compensation due for damages to the remainder of respondents' property. *See Burns v. McGraw–Hill Broadcasting Co., supra.*

In light of our resolution of this issue, we need not further address the Authority's argument that the commissioners improperly considered loss of access in arriving at their damages award.

### III.

Hellerstein contends on cross-appeal that the trial court erred in denying its request for attorney fees without a hearing and without considering the factors enumerated in § 13–17–103, C.R.S.2000. We do not agree.

Section 13–17–102(2), C.R.S.2000, provides for an award of attorney fees against an attorney or party who asserts a claim or defense that lacks substantial justification. "Lacks substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious. Section 13–17–102(4), C.R.S.2000.

■ A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or the law to support it. Similarly, a claim or defense is groundless if the proponent's allegations, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984); *Redmond v. Chains, Inc.,* 996 P.2d 759 (Colo.App.2000). A vexatious claim or defense is one brought or maintained in bad faith. *Fowler Irrevocable Trust 1992–1 v. City of Boulder, supra.*

Attorney fees may also be assessed as a sanction for violating C.R.C.P. 11, which provides that an attorney's signature on a pleading certifies that the attorney believes the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

■ Whether to award attorney fees under § 13–17–102 or as a sanction under C.R.C.P. 11 is a decision committed to the discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion. *Redmond v. Chains, Inc., supra; Bilawsky v. Faseehudin,* 916 P.2d 586 (Colo.App.1995).

[20] Here, Hellerstein filed a motion pursuant to § 13–17–102 and C.R.C.P. 11 to recover the attorney fees it had incurred in defending against the Authority's claim that the City of Aurora annexation agreement required a dedication for Highway E–470. In its motion, Hellerstein argued that "the issue of whether or not E–470's claims were substantially frivolous or substantially groundless must be decided upon the evidence presented at [the pretrial hearing on the dedication issue]." At the end of its motion, Hellerstein requested a hearing "to establish the amounts and reasonableness of its claim" if there was any objection to the awarding of, or the reasonableness of, the fees and costs claimed.

The trial court denied the motion for fees in a written order which stated simply that the court had reviewed the motion and briefs and that it found that the Authority's claims were not frivolous or groundless.

We conclude that the trial court's decision to deny Hellerstein's fee request was not an abuse of discretion. The Authority presented a rational argument, based on documentary evidence and established principles of contract interpretation, in support of its contention that dedication was required. Although we, like the trial court, disagree with the Authority's construction of the annexation agreement, that does not make its arguments frivolous or groundless. *See M Life Insurance Co. v. Sapers & Wallack Insurance Agency, Inc.*, 962 P.2d 335 (Colo. App.1998).

Further, although the Aurora City Attorney had opined that the annexation agreement did not contemplate a dedication for E–470, that fact did not, without more, require the Authority to withdraw its contention that dedication was required. Thus, the trial court was not obligated to assess attorney fees as a sanction for a violation of C.R.C.P. 11.

[21] Nor did the trial court err in denying fees without conducting a separate hearing. As noted, the court had already presided over a hearing on the dedication issue, and Hellerstein had stated in the motion that the issue of whether the Authority's claims were frivolous and groundless had to be decided on the evidence presented at that hearing. In these circumstances, where the court had already heard the evidence and argument on which its frivolous/groundless determination would be based, and where the request in Hellerstein's motion was for a hearing to establish the "amounts and reasonableness" of its claimed fees, the trial court could properly have concluded that, since no fees would be awarded, no further hearing was necessary.

[22] Finally, the trial court's order denying fees will not be set aside for failure to consider the § 13–17–103 factors.

Section 13–17–103 enumerates certain factors a trial court is to consider in determining whether to assess attorney fees, and requires the court specifically to set forth the reasons for its award if it grants an award of fees.

Hellerstein's motion went through the § 13–17–103 factors and detailed the reasons why it believed these factors supported a fee award. The Authority's response set forth the reasons why such an award was unwarranted. In its order, the trial court stated that it had reviewed the motion and the parties' briefs in reaching its conclusion that the Authority's claims were not frivolous and groundless. Based on this, we are satisfied that the court considered the § 13–17–103 factors.

Contrary to Hellerstein's argument, the court was not required to make specific findings as to these factors in an order denying, rather than awarding, attorney fees. *See* § 13–17–103(1), C.R.S.2000; *cf. In re Marriage of Aldrich*, 945 P.2d 1370 (Colo.1997)(findings as to § 13–17–103 factors are required if court awards fees under § 13–17–102).

The order denying Hellerstein's motion for attorney fees is affirmed. The portion of the judgment awarding $1,323,691.15 for the value of the property taken, plus interest on that amount and costs, is affirmed. The judgment for damages to the remainder is reversed, and the cause is remanded for fur-

ther proceedings on that issue consistent with the views expressed in this opinion.

DAILEY and ERICKSON *, JJ., concur.