**FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**An H. HO, Defendant–Appellee.**

No. 02CA0231.

Colorado Court of Appeals, Div. II.

Dec. 19, 2002.

Certiorari Denied April 21, 2003.*

---

* Justice KOURLIS would grant as to the following issue:

Whether the court of appeals erred in ruling that a garagekeeper is deemed to have "borrowed" a customer's car for purposes of coverage under a garagekeepers liability policy, when the garagekeeper used the customer's car without permission to drive after hours to a bar to become drunk and cause an accident while returning home.

Whether the court of appeals erred in construing a garagekeepers liability policy so broadly as to provide coverage to the garagekeeper whenever he was behind the wheel of a customer's car, even though the policyholder did not select coverage for the customer's autos left with the insured garage for service or repair.

Campbell, Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, Colorado, for Plaintiff–Appellant.

Beem & Mann, P.C., Stuart D. Mann, A. Mark Isley, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

This is a declaratory judgment action to determine whether a garage business insurance policy issued by plaintiff, Farmers Alliance Mutual Insurance Company, covers actions of the garage owner who appropriated a customer's car after business hours, became intoxicated, and caused an accident that resulted in severe personal injuries to defendant, An H. Ho. Farmers Alliance appeals the summary judgment finding insurance coverage and awarding attorney fees in favor of An Ho. We affirm in part and reverse in part.

Following the accident, An Ho commenced a personal injury action against garage owner, who tendered defense of the lawsuit to Farmers Alliance and to the customer's personal auto insurer. Both companies issued reservation of rights letters. The parties eventually settled through an agreement whereby An Ho released garage owner from personal liability and the parties agreed to resolve coverage issues through this declaratory judgment action. They agreed that, if the court found coverage, the companies would pay An Ho their policy limits.

Ruling that coverage existed under both policies, the trial court granted summary

judgment in favor of An Ho and awarded him his attorney fees and costs. The personal auto insurer settled with An Ho following the ruling, and this appeal followed.

## I.

■ Farmers Alliance contends the trial court erred in finding coverage under the garage business policy because the customer's car was not a covered auto. We disagree.

■ The interpretation of an insurance policy presents a question of law that we review de novo. *Allstate Insurance Co. v. Huizar,* 52 P.3d 816 (Colo.2002); *Cruz v. Farmers Insurance Exchange,* 12 P.3d 307 (Colo.App.2000).

■ An insurance policy is a contract, which should be interpreted consistently with well-settled principles of contract interpretation. The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Insurance Co. v. Huizar, supra; Allstate Insurance Co. v. Starke,* 797 P.2d 14 (Colo.1990). Accordingly, we construe the terms of an insurance policy as a person of ordinary intelligence would understand them. *State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165 (Colo.1993).

The garage policy at issue here reads in pertinent part:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".

The policy defines "garage operations" as follows:

"Garage Operations" means the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin those locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos". "Garage opera-

tions" also include all operations necessary or incidental to a garage business.

The policy categorizes "covered autos" by way of numerical symbols. The coverage form lists a "menu" of ten potential categories of described autos from which the insured and the insurer select. The declarations page then identifies the covered autos by use of the number.

The three pertinent categories at issue here are:

28 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your employees or partners or members of their households.

29 = NON-OWNED "AUTOS" USED IN YOUR GARAGE BUSINESS. Any "auto" you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes "autos" owned by your employees or partners or members of their households while used in your garage business.

30 = "AUTOS" LEFT WITH YOU FOR SERVICE, REPAIR, STORAGE OR SAFEKEEPING. Any customer's "auto" while left with your "garage operations" for service, repair, storage or safekeeping. Customers include your employees or members of their households who pay for the services performed.

Garage owner selected coverage for symbols 28 and 29 only.

## A.

Farmers Alliance contends the trial court erred in finding the customer's car was covered under symbol 28 because garage owner did not "borrow" the vehicle from the customer. We disagree.

■ When, as here, a term is not specifically defined in a policy, the word retains its plain, ordinary, customary, and generally accepted meaning. *See Cruz v. Farmers Insurance Exchange, supra.*

■ "Borrow" is not a technical insurance term with a strict legal meaning. *See*

*Hanneman v. Continental Western Insurance Co.*, 575 N.W.2d 445 (N.D.1998). It is generally defined as taking something for temporary use. *Black's Law Dictionary* 178 (7th ed.1999). *Webster's Third New International Dictionary* 256 (1986) defines the term as follows: "to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender; obtain the temporary use of," and "to appropriate for one's own immediate use."

Courts have defined "borrow" in the context of automobile insurance policies in similar ways. *See Andresen v. Employers Mutual Casualty Co.*, 461 N.W.2d 181 (Iowa 1990)(a vehicle is borrowed when someone other than the owner temporarily gains its use); *State Farm Fire & Casualty Co. v. American Hardware Mutual Insurance Co.*, 224 Ga.App. 789, 482 S.E.2d 714 (1997)(defining "borrow" as receiving temporarily from another); *American Family Mutual Insurance Co. v. Allied Mutual Insurance Co.*, 562 N.W.2d 159 (Iowa 1997)("borrow" means to take or receive something with the understanding that one will return it or an equivalent); *Schroeder v. Board of Supervisors*, 591 So.2d 342, 347 (La.1991)(the prevailing meaning of borrow in the context of automobile lending requires that the borrower acquire substantial possession, dominion, control, or the right to direct the use of the vehicle).

Here, garage owner's use of the customer's car constitutes borrowing under all of these definitions. When garage owner drove the car he had substantial possession, dominion, and control over the car. Garage owner had temporarily received the car from the customer and from the garage business. When he drove it he was temporarily using it. Finally, there is nothing in the record to indicate that garage owner did not intend to return the car to the business or to the customer.

Farmers Alliance nevertheless argues that garage owner could not borrow the car unless the customer loaned it to him. It points out that the customer had turned the car over to garage owner solely for the customer's own purposes to have it repaired, and garage owner did not request permission to drive the car. However, the policy uses the term "borrow," not the term "loan." The definitions of "borrow" cited above examine conduct from the standpoint of the borrower, not from the standpoint of the owner of the property. *But see Liberty Mutual Insurance Co. v. American Employers Insurance Co.*, 556 S.W.2d 242 (Tex.1977)("borrower" defined as someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes). Furthermore, the policy itself directs examination of the insured borrower's conduct, covering "autos you (the insured) ... borrow," not the conduct, expectations, or intent of a lending owner of the property. Had Farmers Alliance desired to restrict or narrow the meaning of "borrow" or to equate it with "loan," it could easily have done so by defining it in the policy or conditioning coverage upon the intention of the property owner.

Even so, Farmers Alliance asserts that the dichotomy between coverage symbols 28 and 30 reinforces the understanding that vehicles left by customers for repairs or service are not loaned for personal use. It points out that, unlike symbol 29, symbol 30 specifically refers to "any customer's auto while left with your 'garage operations' for service, repair, storage or safekeeping." It argues that, if a customer's auto left for service would be automatically deemed to be borrowed under symbol 28 coverage, symbol 30 would be subsumed within symbol 28, and therefore superfluous. We are not persuaded.

The fallacy in this argument is that whether an auto is "borrowed" depends on the particular circumstances. A garage owner does not automatically borrow an auto left for repair or service. It is only when, as here for example, the garage owner appropriates it for his or her own immediate use that borrowing occurs.

### B.

█ Farmers Alliance asserts there is no coverage because garage owner was using the car for personal reasons and became intoxicated after business hours. However, there is nothing in the policy excluding coverage for personal use or when an auto is

used after business hours. Rather, Farmers Alliance agrees to pay all sums an insured must pay because of bodily injury caused by an accident and resulting from "garage operations involving the ... use of a covered auto." "Garage operations" are broadly defined as including the use of covered autos. And symbol 28 contains no language indicating that the use of covered autos must occur within an employee's scope of employment or during business hours. Under the broad language of the policy, garage owner's use of the car brings it within the coverage language. *See Colonial Insurance Co. v. American Hardware Mutual Insurance Co.*, 969 P.2d 796 (Colo.App.1998)(garage policy covered employee using covered vehicle outside course and scope of employment).

### C.

■ Farmers Alliance next contends that, because garage owner obtained coverage only for those autos described in symbols 28 and 29, the policy excludes coverage for customers' autos left for service or repair under symbol 30, which covers those "autos left with you for service, repair, storage, or safekeeping." We disagree.

■ Coverage provisions in an insurance contract are to be liberally construed in favor of the insured to provide the broadest possible coverage. *Tepe v. Rocky Mountain Hospital & Medical Services*, 893 P.2d 1323 (Colo.App.1994). Thus, when an insurer seeks to restrict coverage, the limitation must be clearly expressed. *Tepe v. Rocky Mountain Hospital & Medical Services, supra.* In the absence of such a clear expression of limitation, or if the policy provisions are inconsistent or ambiguous, the insurance contract must be construed in favor of coverage and against limitations. *See State Farm Mutual Automobile Insurance Co. v. Nissen, supra.*

Here, there is no policy language specifically excluding autos described under symbol 30 if symbol 30 coverage is not selected. In other words, the policy does not exclude autos left for service, repair, storage, or safekeeping. It merely limits coverage to those autos that qualify under symbols 28 and 29. The fact that the policy uses a narrower

definition under symbol 30 does not preclude coverage under symbol 28. *See Cruz v. Farmers Insurance Exchange, supra* (even though a policy at times uses precise definitions, that does not preclude the use of a very broad term to encompass all of those terms). Therefore, garage owner's failure to choose symbol 30 coverage does not exclude autos described under that symbol that are otherwise described and covered under symbols 28 and 29.

### II.

■ Farmers Alliance next contends the trial court erred in awarding attorney fees to An Ho. We agree.

■ In the absence of an express statute, court rule, or private contract to the contrary, attorney fees generally are not recoverable by the prevailing party in a contract or tort action. *Allstate Insurance Co. v. Huizar, supra.*

In *Allstate Insurance Co. v. Robins*, 42 Colo.App. 539, 597 P.2d 1052 (1979), a division of this court held that an insurance policy obligating the insurer to "reimburse the insured for all reasonable expenses incurred at the company's request" entitled the insured to reimbursement of attorney fees incurred in successfully defending a declaratory judgment action brought by the insurer.

Here, the policy contains similar language. However, An Ho is not an insured under the garage business policy. As a stranger to that policy, he is not entitled to reimbursement of attorney fees incurred in pursuing the determination of coverage.

Relying upon *Guaranty National Insurance Co. v. McGuire*, 192 F.Supp.2d 1204 (D.Kan.2002), An Ho nevertheless asserts that an injured party can stand in the shoes of the insured for the purposes of collecting attorney fees. That case, however, involved an assignment of rights under the insurance policy from the insured to the injured party. Even if we assume, without deciding, that Colorado would allow recovery under such circumstances, here there has been no such assignment. Garage owner was not a party

to the settlement agreement, and he did not assign rights or claims to An Ho.

Accordingly, because no contractual basis exists to support an award of attorney fees in favor of An Ho, and he cites no other authority under which an award may be made, the trial court's order awarding attorney fees cannot stand.

In view of this disposition, we need not address the remaining contentions of the parties.

That part of the judgment awarding An Ho his attorney fees is reversed. The balance of the judgment is affirmed.

Judge ROY and Justice ERICKSON ** concur.