**Randall ROBERTS and Cindy Roberts, Plaintiffs–Appellants,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY and American Standard Insurance Company of Wisconsin, Defendants–Appellees.**

No. 03CA0843.

Colorado Court of Appeals, Div. IV.

Oct. 7, 2004.

As Corrected Oct. 25, 2004.

Rehearing Denied Dec. 30, 2004.*

Certiorari Granted May 2, 2005.

* Webb, J., would GRANT.

Roberts Levin & Patterson, P.C., Bradley A. Levin, Jeremy A. Sitcoff, Denver, Colorado, for Plaintiffs–Appellants.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, Colorado, for Defendants–Appellees.

PIERCE, J.

In this action for declaratory relief and breach of contract, plaintiffs, Randall Roberts and Cindy Roberts, appeal a trial court dismissal of their complaint on summary judgment. We affirm.

## I. Background

In August 2000, plaintiffs were involved in an accident when their motorcycle collided with a pickup truck. Both plaintiffs were seriously injured.

Plaintiffs held seven insurance policies with defendants, American Family Mutual Insurance Company and American Standard

Insurance Company of Wisconsin. The American Standard policy covered the motorcycle they were riding; the remaining six policies, issued by American Family, covered their automobiles. Each of the policies provided for uninsured motorist-underinsured motorist (UM/UIM) coverage in the amount of $100,000 per person or $300,000 per accident, but contained the following "anti-stacking" provision: **"Two or more cars insured.** The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy."

According to the policies, both American Family and American Standard are members of "the American Family Insurance Group Madison, WI."

Defendants paid plaintiffs the limit of the motorcycle policy, but disputed plaintiffs' claim that they were entitled to recover additional benefits under each of their automobile policies as well.

In August 2002, plaintiffs filed a complaint. Shortly thereafter, the parties filed cross-motions for summary judgment. Plaintiffs argued that, while the anti-stacking provision prohibits the recovery of cumulative benefits under separate policies, that language should be ignored because (1) it is inconspicuous, (2) it is ambiguous, and (3) it conflicts with other policy provisions.

The trial court disagreed. It held that the bold title **"Two or more cars insured"** gives the insured clear notice as to the situations covered by the provision. The court also held that, while the language could have been clearer, it was not "ambiguous, conflicting or particularly confusing." It found no conflict with other contractual provisions.

## II. Standard of Review

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue for trial as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56. The burden is on the moving party to establish that no genuine issue of fact exists, and any doubts in this regard must be resolved against the

moving party. Our review is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995).

## III. Inconspicuousness

Plaintiffs argue that the anti-stacking provision at issue here is unenforceable because it was not conspicuous. We are not persuaded.

When an insurer seeks to restrict coverage, the limitation must be clearly expressed in the policy. *Tepe v. Rocky Mountain Hosp. & Med. Servs.*, 893 P.2d 1323, 1327 (Colo.App.1994). If an insurer does not clearly express the limitation, or if the policy provisions are inconsistent or ambiguous, the contract must be construed in favor of coverage and against the limitation. *Farmers Alliance Mut. Ins. Co. v. Ho*, 68 P.3d 546, 550 (Colo.App.2002). Moreover, the insured's objectively reasonable expectations will be honored even when a painstaking study of the policy provisions would have negated those expectations. *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167–68 (Colo. 1993).

Plaintiffs argue that, by placing the anti-stacking provision in the "General Provisions" section, which is on page six of the seven-page contract, instead of the section dealing specifically with UM/UIM coverage, defendants did not clearly express this limitation, and the limitation is unenforceable as a result. Plaintiffs also argue that the anti-stacking provision defeated their reasonable expectations.

But here, the limitation was not inconspicuous. The same limitation is alluded to in other sections throughout the policy. The following limitation appears on page two in the part entitled "Liability Coverage," on page three in the part entitled "Medical Expense Coverage," and on page four in the part entitled "Uninsured Motorists Coverage": "We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved."

Plaintiffs could therefore not reasonably have expected that defendants would pay more than the policy maximum merely because two policies could potentially have applied to the same accident. When, as here, the per occurrence limit is clear and a clause precludes stacking, the insured is fully compensated under the policy when he or she receives the policy maximum. *Shean v. Farmers Ins. Exch.*, 934 P.2d 835, 840 (Colo. App.1996).

We also reject plaintiffs' argument that the anti-stacking provision is inconspicuous because it was placed in the "General Provisions" section of the contract rather than in the section explaining UM/UIM coverage. Even setting aside the fact that a similar provision is included in that section, because the anti-stacking provision applies not only to UM/UIM benefits, but to all benefits under the policy, we believe that it was reasonable for the insurer to place it in the General Provisions section. We also agree with the trial court that the heading "Two or more cars insured" adequately informed plaintiffs of the situations to which the provision applied.

Plaintiffs urge that we adopt a rule from other jurisdictions under which "inconspicuous" limitations of coverage are unenforceable. Assuming, without deciding, that this is a correct statement of Colorado law, plaintiffs still cannot prevail under such a theory because we do not rule that the limitation is inconspicuous.

■ Moreover, plaintiffs' cause of action is not aided by the doctrine of reasonable expectations. That doctrine is not a substitute for the rule that insurance policies are to be construed according to well-settled principles of contract interpretation, but merely supplements that rule. *Shean v. Farmers Ins. Exch., supra,* 934 P.2d at 841. A trial court may not look beyond the plain words of an insurance contract to interpret it based on the contracting parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract. *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App.1997).

## IV. Ambiguity

Plaintiffs next assert that the policy is ambiguous with regard to UM/UIM benefits and that its limitations are therefore unenforceable. Like the trial court, we see no such ambiguity.

■ A document is ambiguous when it is reasonably susceptible of more than one meaning. The interpretation of an insurance contract and the determination of whether that contract is ambiguous are questions of law, which we review de novo. *TerraMatrix, Inc. v. U.S. Fire Ins. Co., supra.* Ambiguities in insurance contracts are construed against the insurer. *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1027–28 (Colo.App.2002). But we will not force an ambiguity into the policy in order to resolve it against the insurer. *Lister v. Am. United Life Ins. Co.*, 797 P.2d 832, 834 (Colo.App.1990).

Here, plaintiffs assert that two of the policy provisions are independently ambiguous and unenforceable and that they conflict with each other. The first such provision is found in the UM/UIM section of the policy under the heading of "Other Insurance": "If there is other similar insurance on a loss covered by this Part, we will pay our share according to this policy's proportion of the total limits of all similar insurance."

■ In plaintiffs' view, it is unclear whether "similar insurance" refers only to UM/UIM coverage, and because defendants failed clearly to express this limitation, it is unenforceable. The sole fact that an insurance provision contains a possible ambiguity does not render that section unenforceable; rather, we resolve such ambiguities by adopting the meaning that is more favorable to the insured. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 820 (Colo. 2004) (where terms in an insurance policy are ambiguous, we construe the terms against the drafter and in favor of providing coverage to the insured). Like the trial court, we believe this provision to be unambiguous as it relates to this case. Although, in the abstract, it may be unclear what other insurance could be regarded as "similar," the UM/UIM provisions in plaintiffs' other automobile policies are undoubtedly "similar" within

the meaning of this provision. Therefore, interpreting this section against the insurer does not aid plaintiffs' case.

■ Plaintiffs also assert that the "Limits of Liability" provision, which is found, among other places, in the UM/UIM section of the policy, is ambiguous and unenforceable: "We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved." Plaintiffs allege that an ambiguity arises because, although "these maximums" are discussed, it is not clear to which "maximums" and "declarations" the provision refers. We see no ambiguity.

The policies clearly set forth exactly what "maximums" they refer to; immediately preceding the above quotation, those maximums are defined:

> The limits of liability of this coverage as shown in the declarations apply, subject to the following:
>
> 1. The limit for "each person" is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.
>
> 2. Subject to the limit for "each person" the limit for "each accident" is the maximum for bodily injury sustained by two or more persons in any one accident.

Similarly, a page headed "declarations" accompanies each policy and contains personal information identifying the insured, the number and type of vehicles insured, and the coverage and limits provided. References to "declarations" in the policies apply to these declarations. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo.2003) (courts should read the provisions of the policy as a whole, rather than reading them in isolation).

Plaintiffs also argue that "'declarations' must be construed as referring to a single policy, meaning that coverage under all of the Policies, each of which has a separate declarations page, is triggered." Considering that the contract states, "We will pay no more than these maximums no matter how many vehicles are described in the declara-

tions," we do not see how either an expansive or restrictive reading of "declarations" would aid plaintiffs' argument.

Relying on *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545 (Colo.App.1993), plaintiffs also argue that the "Other Insurance" provision conflicts with the "Limits of Liability" provision. Following *Shelter Mutual Insurance Co. v. Breit,* 908 P.2d 1149 (Colo.App.1995), we find *Compton* distinguishable.

In *Compton,* the court found an ambiguity where an insurance policy indicated that the insurer would only pay up to the limit of any one policy, while another clause suggested that it might pay more than that amount.

But a division of this court distinguished *Compton* in *Breit,* where the court found no ambiguity in a policy stating that (1) the total amount recoverable by the insured could not exceed the highest of any of the applicable coverages, and (2) the insurer's exposure was limited to its pro rata share of that amount. *See Breit, supra,* 908 P.2d at 1152. Unlike *Compton,* neither of these provisions suggested that the insured's recovery could exceed the maximum coverage under the policy with the highest maximum.

The provisions here are similar to those in *Breit.* The "limits of liability" provision limits the compensable loss to the stated maximum no matter how many policies apply. The "other insurance" provision then identifies the percentage of the total damages, not exceeding the policy limit, for which the insurer will be liable. Also, the anti-stacking provision does not conflict with either of these provisions when it also states that the insurer will pay no more than the policy maximum regardless of the number of policies.

## V. Affiliate

Based on a question at oral argument concerning the definition in each policy of "we, us and our" as "the company providing this insurance," we requested supplemental briefs addressing how the policy provisions should be interpreted in light of the apparent affiliate relationship between American Family and American Standard.

■ Defendants' supplemental brief contends that we should not consider this issue sua sponte. It was not raised or tried in the trial court nor presented to us in the initial briefs. We agree with defendants under the doctrine established by the supreme court. *See Comm. for Better Health Care for All Colo. Citizens v. Meyer,* 830 P.2d 884, 888 (Colo.1992) (citing *Dempsey v. Romer,* 825 P.2d 44, 57 n. 13 (Colo.1992): "It is axiomatic that in any appellate proceeding this court may consider only issues that have actually been determined by another court or agency and have been properly presented for our consideration."); *Christensen v. Hoover,* 643 P.2d 525 (Colo.1982); *In re Marriage of Christen,* 899 P.2d 339, 344 (Colo.App.1995) ("Defenses and objections raised for the first time on appeal are not properly before this court and may not be considered by us, as they are deemed to have been waived.").

Moreover, we note that because this issue was not raised before the trial court, the record may not be complete concerning the relationship between American Standard and American Family.

Our de novo review may not have revealed to us other imperfections in the language of the policy. If there are any, they must also be left for decision in later cases.

The judgment is affirmed.

Justice KIRSHBAUM concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

In my view, the plain language of the seven insurance policies before us at least raises a disputed factual issue concerning plaintiffs' entitlement to $200,000 in uninsured motorist/underinsured motorist (UM/UIM) coverage, notwithstanding the anti-stacking provisions in each of the policies. Because our review of both the trial court's summary judgment and the policy language is de novo, I would interpret these provisions in light of the policies' identification of two different companies as insurance providers, even though this argument was not raised below. Accordingly, and with respect, I dissent.

The parties' supplemental briefs agree that: (1) at the time of the accident, plaintiffs had UM/UIM coverage under one motorcycle policy and six automobile policies, each with limits of $100,000 per person and $300,000 per accident; (2) the motorcycle policy was issued by American Standard Insurance Company of Wisconsin, while the six automobile policies were issued by American Family Mutual Insurance Company; and (3) each policy defines "We, us and our" as "the company providing this insurance."

Defendants' supplemental brief asserts that American Standard and American Family "are affiliated insurance companies" and urges us to take judicial notice of filings with the Colorado Secretary of State that indicate, "American Standard is a wholly owned subsidiary of American Family Mutual Insurance Company." The policies identify the issuing companies, American Standard and American Family, as members of "the American Family Insurance Group Madison, WI." Plaintiffs concede that American Standard and American Family "are both members of the American Family Insurance Group," and they "would appear to be affiliated insurer(s) under common ownership or management," within the meaning of § 10–4–609(2), C.R.S. 2003.

However, defendants do not assert that American Standard and American Family are the same company. Nor do they point to any evidence, beyond the Secretary of State filings, that they would have presented, had the "We, us and our" definition been raised below.

Instead, defendants contend we should not interpret the anti-stacking provisions on the basis of this definition because it arose for the first time in response to a question from the panel during oral argument, and before the trial court plaintiffs treated American Standard and American Family as the same company. Despite the majority's adoption of this view, I reject it as fundamentally inconsistent with both summary judgment practice and de novo review of contract language using basic principles of contract interpretation.

The majority cites *Committee for Better Health Care for All Colorado Citizens v. Meyer,* 830 P.2d 884 (Colo.1992); *Christensen v. Hoover,* 643 P.2d 525 (Colo.1982); and *In re Marriage of Christen,* 899 P.2d 339 (Colo.App.1995), for the principle that an appellate court may entertain only issues raised in the trial court. Although this principle is beyond dispute, these cases do not involve de novo review of a contract interpretation question decided on summary judgment.

We review a summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251 (Colo.1995). Because of the strict requirement that summary judgment can be entered only in the absence of any disputed issue of material fact, appellate courts may recognize disputed factual issues in the record, even if not raised by the opposing party. *Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231 (Colo.1984) (reversing summary judgment and remanding for further proceedings based on deficiencies in the factual record, although not questioned by the appellant); *see also NBC Subsidiary (KCNC–TV), Inc. v. Living Will Center,* 879 P.2d 6 (Colo.1994)(Justice Erickson dissenting from majority's refusal to consider error in entering summary judgment on disputed facts because issue not raised in certiorari petition); *cf. United States v. Gammache,* 713 F.2d 588 (10th Cir.1983)(case not ripe for summary judgment due to genuine issues of material fact and ambiguities in materials presented by the parties).

Interpretation of an insurance policy, as of any contract, is reviewed de novo. *TerraMatrix, Inc. v. U.S. Fire Ins. Co.,* 939 P.2d 483 (Colo.App.1997). An insurance policy is a contract that should be construed according to general principles of contract interpretation. *Wota v. Blue Cross & Blue Shield,* 831 P.2d 1307 (Colo.1992).

These general principles include interpreting contracts as a whole, giving effect to *every* provision. *See, e.g., E–470 Pub. Highway Auth. v. Jagow,* 30 P.3d 798 (Colo.App. 2001), *aff'd,* 49 P.3d 1151 (Colo.2002). Indeed, "all parts and clauses of a contract, including exceptions and conditions, must be considered together in order to determine if one particular clause is explained, modified, limited, or controlled by any other clause." *J & S Enters. Inc. v. Cont'l Cas. Co.,* 825 P.2d 1020, 1023 (Colo.App.1991). The numerous cases espousing this principle do not limit its application to only those contractual provisions expressly argued by the parties.

Here, considering all contract language bearing on the anti-stacking provisions furthers judicial economy, because of the high probability that identical language is in many other of defendants' policies insuring Colorado residents and the public nature of automobile insurance. *See Hansen v. Barmore,* 779 P.2d 1360 (Colo.App.1989). Nor does considering all contract language offend due process, because the parties have submitted supplemental briefs addressing the language that I consider precludes summary judgment for defendants.

This case presents only one issue: whether these policies unambiguously prohibit stacking. The record is complete and undisputed concerning all terms of these policies. *Cf. Ward v. Indus. Comm'n,* 44 Colo.App. 301, 612 P.2d 1164 (1980)(addressing issue not raised by the parties that clearly appeared in the record). Applying de novo review, the plain language of the policies does not support the summary judgment entered in favor of defendants, which limited plaintiffs' UM/UIM coverage to $100,000 per person based on the anti-stacking provisions.

According to defendants, the coverage limitation recognized by the trial court necessarily results from provisions in the "UNINSURED MOTORISTS COVERAGE (Including Underinsured Motorist Protection)" sections of each policy that state:

> Regardless of the number of vehicles described in the declaration, insured persons, claims or policies, or vehicles involved in the accident, *we will pay* no more than the limit of liability shown for this coverage in the declarations for each person injured in any one accident.

(Emphasis supplied.)

Defendants also point to an identical paragraph in the GENERAL PROVISIONS section of each policy that provides, "The total limit of *our liability* under all policies issued

to you *by us* shall not exceed the highest limit under any one policy" (emphasis supplied).

However, the policies name two different companies as providers of the insurance. Therefore, applying the common definition of "we," "us," and "our" to these anti-stacking provisions, the trier of fact could conclude that: (1) under the motorcycle policy issued by American Standard, it must provide plaintiffs ("we will pay") with $100,000 of UM/UIM benefits, regardless of additional UM/UIM coverage arising from the six automobile policies that were issued, not "by us," but by American Family, a separate company; (2) similarly, under the automobile policies issued by American Family, it must provide plaintiffs with $100,000 of UM/UIM benefits, regardless of additional UM/UIM coverage arising from the motorcycle policy that was issued by American Standard, a separate company; and (3) the anti-stacking provisions in the automobile policies limit coverage to a total of $100,000 ("the total limit of our liability") under those six policies, all of which were issued by the same company ("by us"), American Family.

None of the policies contains language extending the anti-stacking provisions to affiliates of the named issuing company. *Cf. Curry v. Farmers Ins. Exch.,* 101 P.3d 1133, 2004 WL 2278281 (Colo.App. No. 03CA0629, Oct. 7, 2004)(anti-stacking provision read, "If any applicable insurance other than this policy is issued to you by us *or any other member company of the* [insurer's group of companies] .... (emphasis added)). Hence, interpretation of the anti-stacking provisions to afford plaintiffs $200,000 in UM/UIM coverage is not precluded by accepting defendants' assertion that American Standard and American Family are affiliates, as members of "the American Family Insurance Group Madison, WI." *See Black's Law Dictionary* 59 (7th ed.1999)(defining "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control"); *see also* § 7–101–401(2), C.R.S. 2003.

Thus, on the one hand, if American Standard and American Family are different, albeit affiliated, companies, as the policies state, then the policies do not support summary judgment for defendants. On the other hand, if, notwithstanding their different names, they are effectively the same company, then defendants must establish this fact before the trial court may adopt their interpretation of the anti-stacking provisions.

Accordingly, I would reverse the trial court's orders granting summary judgment for defendants and denying summary judgment for plaintiffs.